QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kathleen M. Sullivan (CA Bar No. 242261)
  kathleensullivan@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood City, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

  Faith E. Gay (*pro hac vice*)
  faithgay@quinnemanuel.com
  Isaac Nesser (*pro hac vice*)
  isaacnesser@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Doe I *et al*.,<br><br>            Plaintiffs,<br><br>      v.<br><br>Cisco Systems, Inc. *et al*.,<br><br>            Defendants. | Case No. 5:11-cv-02449-EJD<br><br>**DEFENDANTS' PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR ADMINISTRATIVE RELIEF** |

Pursuant to Civil Local Rule 7-11, Defendants respectfully submit this memorandum in partial opposition to Plaintiffs' administrative motion filed on November 4, 2011 (the "Administrative Motion"). Plaintiffs' Administrative Motion seeks an order staying briefing and argument on Defendants' September 23, 2011 motion to dismiss, *except* for those portions of the motion to dismiss that relate to the political question, act of state, and international comity doctrines. Defendants support the Administrative Motion insofar as it seeks to stay Defendants' pending motion to dismiss until after the Supreme Court issues its decisions in *Kiobel* and *Mohamad*, but Defendants oppose Plaintiffs' proposal insofar as it asks the court to address the viability of Plaintiffs' complaint in piecemeal fashion. Rather, the only approach consistent with judicial economy and orderly adjudication is to stay the pending motion to dismiss in its entirety pending decision in *Kiobel* and *Mohamad*.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on May 19, 2011, asserting a large number of novel and complex claims. The gravamen of the Complaint is its assertion of putative international law claims under the Alien Tort Statute (28 U.S.C. 1350) ("ATS") and similar claims under the Torture Victim Protection Act (28 U.S.C. 1350 *note*) ("TVPA"). In light of the novelty and complexity of the complaint, the Parties stipulated and this Court ordered that Defendants' motion to dismiss would proceed on an extended briefing schedule with 50-page opening briefs.

On August 4, 2011, Defendants moved to dismiss the entire complaint on multiple alternative grounds. In the fifty pages of that motion, only five pages of argument sought dismissal on the basis of the political question, act of state, and international comity doctrines. The remainder sought dismissal on multiple grounds, including (a) that the ATS and TVPA do not provide for claims against corporations (the questions at issue in *Kiobel* and *Mohamad*); (b) that the ATS does not provide jurisdiction for extraterritorial claims; (c) that the ATS and TVPA claims do not allege acts by Defendants acting under color of state law; (d) that aiding and abetting liability is unavailable under the TVPA and ATS; (e) that the complaint does not allege acts by Defendants warranting secondary liability; (f) that the conspiracy claims fail to state a claim; (g) that several of the ATS claims are not premised on actionable international law norms;

1  (h) that California tort law does not apply extraterritorially; (i) that the California state law claims
2  are untimely; (j) that the California state law allegations do not support aiding and abetting
3  liability; (k) that California's Unfair Business Practices law ("UBP") does not apply
4  extraterritorially; (l) that the allegations of lost income are too attenuated to support a UBP claim;
5  (m) that the Electronic Communications Privacy Act ("ECPA") does not apply extraterritorially;
6  (n) that there is no private right of action under the ECPA; (o) that the ECPA claim is otherwise
7  defective; and (p) that the Complaint fails to allege actionable claims against individual Cisco
8  executives.

9  Rather than oppose the motion to dismiss, Plaintiffs on September 2, 2011 filed an
10  amended complaint. This vitiated Defendants' then-pending motion to dismiss and necessitated
11  further delay. On September 23, 2011, Defendants filed a motion to dismiss the amended
12  complaint. By agreement of the parties so ordered by this Court, Plaintiffs' opposition brief is
13  currently due on November 18, 2011; Defendants' reply is due January 16, 2012; and argument is
14  scheduled for February 17, 2012.

15  On October 17, 2011, the Supreme Court of the United States granted certiorari in *Kiobel*
16  *v. Royal Dutch Petroleum Co.*, and *Mohamad v. Rajub*, Nos. 10-1491 and 11-88 ("Kiobel" and
17  "Mohamad"). The questions presented in *Kiobel* and *Mohamad* are directly relevant here: (1)
18  Whether ATS and/or TVPA claims can be asserted against corporations, and (2) Whether the
19  availability of ATS claims against corporations is properly resolved as a matter of subject matter
20  jurisdiction versus as a merits consideration. *Kiobel* and *Mohamad* are scheduled to be argued on
21  the same date, likely in February 2012 (the same month that Defendants' motion to dismiss is
22  currently scheduled to be heard), and are due to be decided by the end of the Supreme Court's
23  term in June 2012. Because of the relevance of *Kiobel* and *Mohamad* to the issues here, as well as
24  the relatively short time frame on which the Supreme Court will issue its decision, Defendants
25  proposed that further briefing on their motion to dismiss the complaint be stayed until after *Kiobel*
26  and *Mohamad* are decided. Plaintiffs initially refused a stay altogether, but later agreed to a stay
27  *except for* those portions of Defendants' motion to dismiss that relate to the political question, act
28  of state, and international comity doctrines.

## ARGUMENT

Defendants join with the Plaintiffs in requesting a stay pending the Supreme Court's decisions in *Kiobel* and *Mohamad*. Defendants part ways with the Plaintiffs only insofar as Plaintiffs seek to brief a subset of the dismissal motion now. This proposal to subdivide the Complaint and motion to dismiss, requiring this Court to address its viability potentially twice, should be rejected. The entire motion to dismiss should be stayed.

Judicial economy and orderly adjudication demand that Defendants' motion to dismiss be considered once. **First**, each of the arguments in Defendants' motion to dismiss is asserted in the alternative, such that there are multiple bases on which this Court could dismiss the Complaint in its entirety. Only five pages of argument, out of Defendants' 50-page motion to dismiss, seek dismissal on justiciability grounds, and the Court, in its judgment, may ultimately decide to dispose of this litigation on grounds other than justiciability. Yet Plaintiffs' proposal would *force* the Court to take up justiciability issues now, and would require the court to consider them in isolation from concerns about whether the claims are plausible, time barred, or otherwise non-actionable (questions that will be resolved at least in part by *Kiobel* and *Mohamad*). **Second**, if by chance this Court or the Ninth Circuit rejects Defendants' justiciability arguments, then on Plaintiffs' proposal the parties will be back in front of this Court in short order, briefing and arguing yet a *second* motion to dismiss which will consist of the arguments that had been stayed. The Federal Rules generally do not contemplate repetitive motions to dismiss, in order to prevent just this result. Although a grant of dismissal on justiciability grounds would, if affirmed by the Ninth Circuit, entirely dispose of this litigation — and Defendants believe that this would in fact be a correct outcome — the risk of a different outcome, together with the overlap between the justiciability issues and the other grounds for dismissal (as discussed below) counsels against such an approach. Piecemeal resolution of Defendants' motion to dismiss will in no way speed this Court's determination of the ultimate merits of Plaintiffs' allegations, or of Plaintiffs' ability to have their allegations heard. Rather, it creates a risk of delay, uncertainty, and waste that would contradict the interests of the Court and the Parties.

Plaintiffs' proposal also makes little legal sense, because the justiciability arguments in

Defendants' motion to dismiss are not severable from the remainder of the arguments in Defendants' motion — they all relate to the fundamental question of whether the Defendants can and should be held liable on the facts alleged here, in view of the practical consequences that such liability would pose.  In the last (and only) Supreme Court decision addressing the ATS, the Court accepted certiorari on seemingly limited questions — yet its decision repeatedly addressed and fundamentally turned upon justiciability concerns:

> [T]he possible collateral consequences of making international rules privately actionable argue for judicial caution ...[,] for **the potential implications for the foreign relations of the United States of recognizing such causes should make courts particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs**. It is one thing for American courts to enforce constitutional limits on our own State and Federal Governments' power, but quite another to consider suits under rules that would go so far as to claim a limit on the power of foreign governments over their own citizens, and to hold that a foreign government or its agent has transgressed those limits.  Yet modern international law is very much concerned with just such questions, and apt to stimulate calls for vindicating private interests in [ATS] cases. Since many attempts by federal courts to craft remedies for the violation of new norms of international law would raise risks of adverse foreign policy consequences, they should be undertaken, if at all, with great caution.

*Sosa v. Alvarez-Machain,* 542 U.S. 692, 727-728 (2004) (emphasis added, internal citations omitted).  That is, the Supreme Court has directly instructed District Courts to consider the substance of ATS claims *in tandem* with practical considerations such as those posed by the political question, act of state, and international comity doctrines.[1]  The Supreme Court expressly discussed an ATS suit that was then pending against a corporation, in connection with its holding in *Sosa* that courts "inevitably must [exercise] … judgment about the practical consequences" of ATS liability, and the possibility of "a policy of case-specific deference to the political branches." *Sosa*, 542 U.S. 692, 733.  Similarly here, the extent to which corporations can be civilly sued in United States courts for international law violations allegedly committed abroad directly implicates the justiciability questions raised in Defendants' motion to dismiss.  As three judges of the Ninth Circuit recently argued, corporate liability under the ATS would raise fundamental

---

[1] *See also Sosa*, 542 U.S. at 761 (Breyer, J. concurring) ("Since enforcement of an international norm by one nation's courts implies that other nations' courts may do the same, I would ask whether the exercise of jurisdiction under the ATS is consistent with… comity….").

justiciability concerns:  The specter of "a new imperialism, entitling [U.S.] court[s], and not the peoples of other countries, to make the law governing persons within those countries."  *Sarei v. Rio Tinto, PLC*, --- F.3d ----, 2011 WL 5041927, at * 54 (9th Cir. Oct. 25, 2011) (Kleinfeld, J., dissenting).  So too here, *Kiobel* and *Mohamad* will decide questions bearing on justiciability, and thus the justiciability arguments in the present motion to dismiss must be considered together with the substantive arguments, not carved apart from one another as Plaintiffs tactically propose here.

Accordingly, the entirety of Defendants' motion to dismiss should be stayed.  Such a stay would be in keeping with a long history in this Circuit of courts staying ATS/TVPA cases pending the Ninth Circuit's and/or Supreme Court's resolution of disputed legal questions of first impression.[2]  All of those cases sensibly stayed the *entire* litigation pending a decision above — none issued piecemeal stays of only some portions of the case, as Plaintiffs propose here. Plaintiffs' piecemeal proposal should be rejected.

## CONCLUSION

Defendants´ motion to dismiss should be stayed in its entirety, and rescheduled only after the United States Supreme Court decides *Kiobel* and *Mohamad.*

DATED:  New York, New York  
November 8, 2011

QUINN EMANUEL URQUHART &  
  SULLIVAN, LLP

By: /s/ Kathleen M. Sullivan  
Kathleen M. Sullivan  
Faith E. Gay  
Isaac Nesser

51 Madison Avenue, 22d Floor  
New York, New York  10010-1601  
(212) 849-7000

*Attorneys for Defendants*

---

[2] *See Sarei v. Rio Tinto,* 456 F.3d 1069, 1077 (9th Cir. 2006) (discussing December 2003 order by which the Ninth Circuit withdrew submission of appeal "to wait for the Supreme Court's opinion in *Sosa*."); *Doe v. Nestle*, No. 2:05-cv-05133, DE 72, 79, 88 (N.D. Cal.) (staying proceedings from November 2006 to January 2009 pending the Ninth Circuit's decision in *Sarei*); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1264 (C.D. Cal. 2004) (discussing March 2004 order by which the Court stayed proceedings pending the Supreme Court's decision in *Sosa*).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's ECF System.

Dated: November 8, 2011

          /s/ Arthur Roberts
          Arthur Roberts