1  KATHRYN LEE BOYD, ESQ. (SBN 189496)
   lboyd@srbr-law.com
2  RAJIKA L. SHAH, ESQ. (SBN 232994)
   rshah@srbr-law.com
3  **SCHWARCZ, RIMBERG, BOYD & RADER, LLP**
4  6310 San Vicente Boulevard, Suite 360
   Los Angeles, California 90048
5  Phone: (323) 302-9488; Fax: (323) 931-4990

6  TERRI MARSH, ESQ. (*pro hac vice*)
   terri.marsh@hrlf.net
7  JORDAN BERMAN, ESQ. (*pro hac vice*)
   Jordan.Berman.HRLF@gmail.com
8  **HUMAN RIGHTS LAW FOUNDATION**
9  1615 L Street NW, Suite 1100
   Washington, D.C.  20036
10 Phone: (202) 697-3858; Fax: (202) 355-6701
11 Attorneys for PLAINTIFFS

12 KATHLEEN M. SULLIVAN (CA Bar No. 242261)
   kathleensullivan@quinnemanuel.com
13 FAITH E. GAY (*pro hac vice*)
   faithgay@quinnemanuel.com
14 ISAAC NESSER (*pro hac vice*)
   isaacnesser@quinnemanuel.com
15 **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
16 51 Madison Avenue, 22nd Floor
   New York, New York 10010
17 Telephone: (212) 849-7000; Facsimile: (212) 849-7100
   Attorneys for DEFENDANTS
18

19  **UNITED STATES DISTRICT COURT FOR THE
    NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**
20

| | |
|---|---|
| DOE I, DOE II, Ivy HE, DOE III, DOE IV, DOE V, DOE VI, ROE VII, Charles LEE, ROE VIII, and LIU Guifu,<br><br>Plaintiffs,<br>vs.<br>CISCO SYSTEMS, INC., John CHAMBERS, Thomas LAM, Owen CHAN, Fredy CHEUNG, and DOES 1-100,<br><br>Defendants. | Case No. 5:11-cv-02449-EJD-PSGx<br><br>Assigned to the Honorable Edward J. Davila, U.S.D.J.<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Action Filed: May 19, 2011<br>FAC Filed: Sept. 2, 2011<br>C Conference: July 19, 2013<br>Time: 10:00 a.m.<br>Courtroom: 4, 5th Floor |

28  02099.62172/5414709.1

**1. JURISDICTION AND SERVICE**

Plaintiffs assert that this Court has subject matter jurisdiction pursuant to the Alien Tort Statute, 28 U.S.C. § 1350; The Torture Victims Protection Act, 28 U.S.C. § 1350 note; 28 U.S.C. § 1331 (federal question); 28 U.S.C. 1332 (diversity); and 28 U.S.C. § 1367 (supplemental jurisdiction). Defendants contend that this court lacks subject matter jurisdiction; that it should not exercise supplemental jurisdiction; and that Plaintiffs' claims are not justiciable pursuant to the political question, act of state, and international comity doctrines. Defendants do not challenge personal jurisdiction or venue.

**2. FACTS**

**A. Plaintiffs' Statement**

Plaintiffs are U.S. and Chinese citizen practitioners of Falun Gong, a peaceful religious practice that is based on the tenets of Zen Shan Ren (Truthfulness, Compassion, and Tolerance). Cisco Systems, Inc., its CEO John Chambers and other named Defendants planned, designed, implemented, serviced, and maintained the Golden Shield database-driven surveillance apparatus in full collaboration and consultation with the Chinese Communist Party and Public Security officers, knowing and intending that it would be utilized by them to identify, track, surveil, isolate, confine, ideologically convert, torture, and injure Plaintiffs and similarly situated Falun Gong practitioners, all in violation of international, U.S., and California law. Defendants planned, designed, customized, constructed, serviced, managed, and maintained anti-Falun Gong features and other components of the network from their offices in the United States, where they also made all major corporate marketing and other decisions relevant to this action.

As a direct result of the Defendants' conduct, which occurred largely in the United States, Plaintiffs were subjected to egregious violations of the law of nations, U.S. and California state law, including false imprisonment, torture, cruel assault, battery and wrongful death, for which judicial relief is warranted in the form of compensatory and punitive damages.

Characterizations of Cisco-designed routers, filtering and/or security systems as generic products sold everywhere misrepresents the intensive process of customization entailed in assembling and integrating the anti-Falun Gong features of the Golden Shield with neutral or dual

purpose components. The generic components were necessary to achieve its effectiveness in suppressing Falun Gong, but they were not sufficient. The effectiveness of the overall system depends on the integration of the highly customized features noted in this section with all other components.

The human rights abuses carried out by Chinese Communist Party and Public Security officers in China through and as a result of the Defendants' conduct comprise *ultra vires* acts that not only violate Chinese law, but as importantly do not implicate the Government of China.

The development of a market strategy for China and initial phases of the Golden Shield project required extensive planning and coordination among product divisions and engineering, sales and marketing teams based in Cisco's San Jose headquarters office ("San Jose") under the direct oversight of San Jose senior executive personnel. Throughout this process, Cisco headquarters established the project specifications, objectives, cross-functional management strategy, encompassing near and long-term human resource requirements, internal cost structure, customer pricing strategies, and long-term competitive strategy. In this process, Cisco headquarters initiated communication with Chinese Communist Party leadership and Public Security officers; conducted due diligence analyses; supervised and directed a marketing strategy to run the Golden Shield project in China. San Jose's involvement in the design and implementation process was similarly pervasive and crucial to the success of the ongoing Golden Shield project in China including careful and ongoing review of types of Internet and other activity the Golden Shield was developed to identify and repress.

### B. Defendants' Statement

The Complaint alleges that Chinese police, prosecutors, judges, and penal institutions imposed unlawful penalties and committed illegal acts of violence against the Plaintiffs in the course of enforcing the domestic policy of the People's Republic of China, which has promulgated laws outlawing the practice of Falun Gong. The Complaint alleges that these law enforcement authorities made use of a tool called the "Golden Shield" — a loose term for an e-government project designed to connect police offices to one another and otherwise increase

police efficiency — in order to locate and apprehend the Plaintiffs, and that the Golden Shield employs networking equipment purchased from Cisco.

Plaintiffs allege that Cisco is liable for their alleged injuries even though, among other things, (a) the Cisco products sold in China are the same ones Cisco sells in the U.S. and around the world in compliance with strict U.S. export regulations, (b) there is no allegation that Cisco was consulted during the Golden Shield's development, (c) the Golden Shield was a generic law enforcement tool, and (d) there is no allegation that Cisco knew about the Plaintiffs, their lawful arrests, or their allegedly unlawful treatment. Cisco's legal sale of generic network routers does not support a claim for aiding and abetting police brutality or international law violations.

**3.     LEGAL ISSUES**

**A.     Defendants' Statement.**  Defendants contend that the action should be dismissed for the following reasons among others:  (a) The Complaint raises nonjusticiable political questions; (b) The Complaint challenges acts of a foreign government in violation of the act of state and international comity doctrines; (c) the Alien Tort Statute ("ATS") does not provide jurisdiction against corporations; (d) the ATS does not provide jurisdiction for extraterritorial claims; (e) the ATS and TVPA claims do not allege acts by defendants acting under color of state law; (f) aiding and abetting liability is unavailable under the TVPA and ATS; (g) the Complaint does not allege acts or intent by defendants warranting secondary liability; (h) the conspiracy claims fail to state a claim; (i) several of the ATS claims are not premised on actionable international law norms; (j) the ATS and TVPA claims otherwise fail to state a claim or establish jurisdiction; (k) California tort law does not apply extraterritorially; (l) the California state law claims are untimely; (m) the California state law allegations do not support aiding and abetting liability; (n) California's Unfair Business Practices law ("UBP") does not apply extraterritorially; (o) the allegations of lost income are too attenuated to support a UBP claim; (p) the state-law allegations otherwise fail to state a claim; (q) the Electronic Communications Privacy Act ("ECPA") does not apply extraterritorially; (r) there is no private right of action under the ECPA; (r) the ECPA claim is otherwise defective; and (s) the Complaint fails to allege actionable claims

against individual Cisco executives. Defendants anticipate that additional legal issues will arise during the pendency of the litigation.

### B. Plaintiffs' Statement

Plaintiffs will move the Court to file a second amended complaint based on the changes in controlling law in *Kiobel*, as well as newly discovered evidence. Plaintiffs further note that Defendants previously filed a Motion to Dismiss the First Amended Complaint (see Docket 67) and will move to dismiss the second amended complaint, which Plaintiffs will oppose, based on several disputed points of facts and law. Plaintiffs' preliminary positions include the following:

The Plaintiffs' claims are justiciable and are not precluded by the political question doctrine, the act of state doctrine, or principles of international comity; Plaintiffs' claims are sufficient under FRCP 12(b)(6); The claims in this case are domestic or touch and concern the United States with sufficient force to overcome the Kiobel presumption for claims under the ATS; The conduct of the U.S.-based corporate defendant that occurred largely and substantially in the United States and which gave rise to the claims in this case touch and concern the US to an extent sufficiently greater than "mere corporate presence"; The actions of U.S. citizen defendants who, while located in the United States, engaged in extensive activities directly related to alleged violations of international law including ideological conversion through torture, encompassing high-level planning, design, manufacture, marketing, implementation, optimization, consultation, troubleshooting, and a range of other activities, is domestic conduct or, at minimum, sufficiently touches and concerns the United States to displace the Kiobel presumption.

The applicable standard for aiding and abetting liability under the ATS is knowingly providing substantial assistance to the principal violator; Should this Court determine that aiding and abetting liability requires Defendants' specific intent to substantially assist the commission of the human rights violations alleged, Plaintiffs' factual allegations meet that standard; The applicable standard for conspiracy is met if two or more persons agree to commit a wrongful act and the defendant joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to accomplish it and one or more of the violations were committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy; Plaintiffs' factual

allegations meet this standard; Liability under the doctrine of command responsibility exists where (1) there is a superior-subordinate relationship such that the superior possessed effective control over the subordinates engaged in illegal conduct, (2) the superior knew or had reason to know that those subordinates were about to or had committed illegal acts, and (3) the superior failed to take necessary and reasonable measures to prevent or punish those acts; Plaintiffs' factual allegations meet this standard; The applicable standard for agency liability exists where: where the agent was (1) performing acts of the kind which he is authorized to perform, and (2) those acts are motivated-at least in part-by an intent to benefit the corporation. The applicable standard for alter ego liability exists where there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and that failure to disregard [their separate identities] would result in fraud or injustice. Plaintiffs' factual allegations meet these standards.

Additional positions on points of law and fact beyond those set out above may be included in the Plaintiffs' Opposition to the Defendants' Motion to Dismiss. Additional disputed questions of fact and law beyond those set out above are to be determined from the discovery process and from the Defendants' Answer to the Complaint.

**4.    MOTIONS**

    **A.    Plaintiffs' Statement**

Concurrently with the filing of the Complaint on May 19, 2011, Plaintiffs filed a Motion to Commence and Proceed as Pseudonymous Plaintiffs, *see* DE 2, and Doe III and Doe IV's Motion to Commence and Proceed Through Appointed Next Friend, *see* DE 5, (together, "Motions"). *See* DE 27, 28. The Parties stipulated, *see* DE 38, which the Court on July 26, 2011, so ordered, *see* DE 45, that Plaintiffs may proceed anonymously and through next friends through to the resolution of Defendants' motion to dismiss. *Id.* at 2:26-28, 3:1-2. The Parties stipulated that, following the Dismissal Decision Plaintiffs have the right to move for leave to proceed anonymously and/or through next friend, or renew their original motions on those matters. *Id.* at 3:3-8. Following the Court's decision of the motion to dismiss, Plaintiffs anticipate seeking a stipulation or, in the alternative, moving for a protective order that would restrict publication or

1  communication by Defendants which would put Plaintiffs and witnesses at risk for identification
2  and prosecution by the CCP or the Public Security Officials in China.

3  Pursuant to Fed. R. Civ. P. Rule 15(a)(2), Plaintiffs anticipate filing a motion to submit a
4  second amended complaint in light of the change in the controlling law in *Kiobel* and to add
5  previously unavailable evidence. *See* Section 5 *infra* for further information.

6  Plaintiffs also anticipate filing a motion for class certification pursuant to Fed. R. Civ. P.
7  Rules 23(a) and 23(b)(3) following the Court's decision on a renewed Motion to Dismiss..

8  **B.     Defendants' Statement**. Defendants moved to dismiss the Plaintiffs' initial
9  Complaint, and moved to dismiss Plaintiffs' Corrected First Amended Complaint ("FAC"), on the
10 grounds listed above. Defendants expect to oppose any motion for leave to file a second amended
11 complaint (subject to review of the proposed amended complaint) on grounds that such an
12 amendment would be wasteful, futile, and otherwise inappropriate.  Defendants contend that a
13 second amendment of the Complaint in light of *Kiobel*'s holding regarding the non-extraterritorial
14 application of the ATS would be futile and wasteful, as  Defendants already argued in their
15 motions to dismiss the initial complaint that Plaintiffs' ATS claims should be dismissed because
16 the ATS does not apply extraterritorially, and Plaintiffs  therefore already had the opportunity to
17 allege facts demonstrating a connection to the territorial United States in their FAC.  As
18 Defendants have already argued in their motion to dismiss the FAC, Plaintiffs continue to allege
19 conduct and injuries arising exclusively in the People's Republic of  China and thus not
20 cognizable under the ATS: all of the alleged physical injuries at issue in this action occurred in
21 China; all of the alleged conduct in violation of international law occurred in China; and, setting
22 aside conclusory allegations, the FAC alleges no specific facts relating to conduct or effects in the
23 United States beyond Cisco's mere corporate presence in California.  No further opportunity to
24 amend in light of Kiobel is therefore appropriate and Defendants should not be put to the burden
25 of preparing yet a third motion to dismiss in this case.

26 Following resolution of Plaintiffs' motion to amend, Defendants will file a motion to
27 dismiss the then-operative Complaint. Defendants likewise expect that they will oppose any
28 motion for class certification.

## 5. AMENDMENT OF PLEADINGS

### A. Plaintiffs' Statement.

Pursuant to Fed. R. Civ. P. Rule 15(a)(1)(B), Plaintiffs amended the complaint on September 2, 2011. *See* DE 60, 62-1. Plaintiffs named an additional defendant, Fredy Cheung, former Managing Director of Cisco Systems Hong Kong and the Philippines and current Vice President of Cisco Systems China. Plaintiffs also amended complaint to include additional technical information to support Plaintiffs' existing claims.

Pursuant to Fed. R. Civ. P. Rule 15(a)(2), Plaintiffs anticipate requesting leave to submit a second amended complaint in light of the change in the controlling law in *Kiobel*, as well as newly discovered evidence. Plaintiffs previously expressed intent to amend the complaint on these grounds in on February 8, 2012 (DE 80), and reiterated that intent on March 16, 2013 (DE 82) and September 14, 2012 (DE 85). At no point did Defendants express intent to oppose such a motion until last week. Under the applicable 9th Circuit standards for the right to amend, there is a presumption in favor of permitting Plaintiffs to amend unless it would be, inter alia, futile or unduly prejudicial to Defendants. The defendants bear the burden of proving that Plaintiffs' claims fail as a matter of law. This they cannot do absent a showing that *no* set of facts under the amendment would constitute a valid claim. That is not the case here, as Plaintiffs seek to raise significant, newly discovered facts naturally related to existing claims and to the new legal standard articulated in *Kiobel*. Plaintiffs drafted their complaint in accordance with pre-*Kiobel* doctrine and have not had an opportunity to allege facts showing that the conduct in question was domestic and/or touches and concerns the United States with sufficient force. Plaintiffs did not subscribe to Defendants' interpretation of the SOSA regime as not permitting extraterritorial conduct under the ATS in Defendants' terminated Motion to Dismiss. Moreover, their argument was based almost entirely on amicus briefs and dissenting opinions. (DE 49:31-33.) This in no way provided Plaintiffs with notice of the need to meet a newly established standard under *Kiobel*.

Nor would the new allegations greatly alter the nature or complexity of the litigation given the preliminary stage of the proceedings in this case.

- 7 -

As Plaintiffs have noted in previous case management reports, they also seek to amend the complaint to include evidence discovered during the stay of this case that was not previously available. This new evidence bears directly upon both the legal issues raised in *Kiobel* and on the merits of this matter. The evidence provides additional details concerning Defendants' conduct in the United States and addresses other legal doctrines relevant to establish the Court's authority to hear this case.

This Court terminated Defendants' Motion to Dismiss due to the anticipated change in law. Due to this change and the above stated reasons, Plaintiffs will request leave to file a new complaint reflecting the current state of the law.

**B.     Defendants' Statement**. Defendants contend that any motion to amend should be denied for the reasons discussed above in section 5(B).

**6.     EVIDENCE PRESERVATION:** The Parties confirmed that a litigation hold has been placed on all evidence relevant to the issues reasonably evident in this action. Plaintiffs will forward Defendants a retention letter to help them determine what information to preserve. See ESI Discovery Guideline 2.01 (Preservation).

**7.     DISCLOSURES**

**A.     Plaintiffs' Statement.** Plaintiffs have agreed to delay initial disclosures until after the disposition of the motion to dismiss. Defendants' assert that they "cannot begin discovery without the knowledge of Plaintiffs' names." Plaintiffs' disagree.

**B.     Defendants' Statement.** Plaintiffs have agreed to "delay initial disclosures until after the disposition of the motion to dismiss," which Defendants understand to mean that all discovery has been stayed by agreement, pending this Court's decision on Defendants' motion to dismiss. Such a stay is appropriate in light of the multiple grounds for dismissal presented in Defendants' motion to dismiss, which would be dispositive of all counts in the Complaint. Moreover, as indicated above, the parties have agreed that the Plaintiffs' identities shall be kept anonymous pending a decision on Defendants' motion to dismiss — Defendants cannot begin discovery without knowledge of the Plaintiffs' names (and the names of the "next friends" who are purporting to bring claims on behalf of certain Plaintiffs).

- 8 -
JOINT CASE MANAGEMENT STATEMENT
Case No. 5:11-cv-02449-EJD-PSG

**8. <u>DISCOVERY</u>**

**A. Plaintiffs' Statement.** In a conference between the Parties in or about August 2011, Plaintiffs asked if Defendants would be willing to enter into a stipulated protective order, which would likely prove beneficial to both Parties, in order to facilitate the discovery process. Although Defendants agreed that a protective order would likely be necessary as the discovery process was likely to involve sensitive information other than the identity of Plaintiffs, they were unwilling to so stipulate at this time. Defendants also were not able to discuss or agree to Plaintiffs' proposal that the Parties stipulate to the non-production of expert notes. In light of Defendants' position, the Parties do not have an agreed discovery plan to report to the Court.

**B. Defendants' Statement.** Defendants contend that discovery should remain stayed pending resolution of Defendants' motion to dismiss.

**9. <u>CLASS ACTIONS</u>**

**A. Plaintiffs' Statement**

Plaintiffs will seek to certify a class pursuant to Fed. R. Civ. P. Rules 26(a) and (b)(3). The class which Plaintiffs seek to represent is comprised of, and defined, as follows: "All persons who were identified as Falun Gong practitioners through the use of the Golden Shield by Chinese authorities and were thereafter subjected to detention and/or physical abuse and/or torture for their Falun Gong related activity, and suffered injury as a result."
There are sufficient facts to show that Plaintiffs are entitled to maintain this action as a class. Members of the proposed Class are *ascertainable* and identifiable. Plaintiffs believe that there are many thousands of members of the class as described above (*numerosity*), although the number and identities of the individual class members are presently unknown. Plaintiffs' claims are *typical* of the claims of the other members of the class,. Plaintiffs are committed to vigorous prosecution of this action and have retained competent legal counsel with extensive experience in the prosecution of human rights actions and class actions (*adequacy*). *Common* questions of law and fact exist as to all members of the class and *predominate* over any questions solely affecting individual members of the class. And maintenance of this action as a class action presents few difficulties, conserves the resources of the Parties and the court system, and protects the rights of

1   each member of the class and of Defendants (*superiority*).  Plaintiffs can provide supporting

2   information for all of these points when moving to certify their class or at the court's request.

3         Plaintiffs will move the Court to certify their class following the Court's decision on a

4   renewed Motion to Dismiss and the issuance of a protective order.

5         **B.**    **Defendants' Statement**

6         Defendants believe that Plaintiffs cannot satisfy the requirements of FRCP 23, and that

7   any class certification motion must await discovery regarding issues relevant to class certification,

8   including without limitation depositions of the named Plaintiffs.

9   **10.**    **RELATED CASES:** Defendants believe that this action is legally and factually related to

10   *Daobin v. Cisco Systems Inc.,* No. 8:2011-cv-01538 (D. Md.).  Plaintiffs disagree.  *See* DE 47, 48.

11   **11.**    **RELIEF:**

12         **A.**    **Plaintiffs' Statement.**  Plaintiffs seek the following forms of relief: certification

13   of a class pursuant to Fed. R. Civ. P. Rules 23(a) and (b)(3); compensatory damages including

14   general and specific damages; punitive damages; injunctive relief enjoining Cisco from future

15   unlawful activity; costs of suit, including but not limited to attorneys' fees pursuant to 18 U.S.C.

16   § 2512(1) and California Code Civ. P. § 1021.5; and other and future relief as the Court deems

17   appropriate. Plaintiffs anticipate consultation with a damages expert will be required in order to

18   quantify monetary damages associated with the violations of international law and state law, as

19   well as for lost income calculations associated with Plaintiffs' claim under Cal. *Bus. & Prof.*

20   *Code* § 17200 et seq. Plaintiffs can provide relevant precedent that lays out the standards for

21   damages in cases similar to the case at bar.

22         **B.**    **Defendants' Statement.**  Defendants believe that the Complaint must be

23   dismissed as a matter of law, that class certification is unavailable, and that liability cannot be

24   established.  Moreover, Defendants are uncertain what measure of relief Plaintiffs seek and thus

25   are uncertain about the basis on which damages would be calculated if liability were established.

26   **12.**    **SETTLEMENT AND ADR:** Plaintiffs are willing to enter into Court-sponsored

27   mediation. Defendants believe that settlement discussions and ADR would be unproductive at this

28   time; if such matters become relevant in the future, Defendants would prefer private mediation in

light of the complexity and unique sensitivities of this matter. The Parties participated in an ADR phone conference on June 4, 2013 and are scheduled to participate in another on October 8, 2013.

**13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES:** Plaintiffs have filed a Declination to Proceed Before a Magistrate. DE 18 (May 19, 2011).

**14. OTHER REFERENCES:** The Parties agree that this case is not suitable for reference to binding arbitration, a special master, or JPML. See DE 48.

**A. Defendants' Statement.** Defendants contend that coordination of this action with *Daobin v. Cisco Systems, Inc.*, No. 8:2011-cv-01538 (D. Md..), would avoid conflicts, conserve resources, and promote an efficient determination of the actions. In *Daobin*, as in this action, plaintiffs allege that Cisco sold internet technology to Chinese law enforcement officials and thereby became liable under the ATS and other laws for physical injuries allegedly inflicted by Chinese law enforcement officials on Chinese citizens in China. Defendants moved to dismiss the Amended Complaint in *Daobin* on July 9, 2013, and expect that the motion will be fully briefed by mid-August 2013.

Because briefing in the *Daobin* action is under way, and because the arguments that Defendants have asserted and will assert in their motion to dismiss the *Daobin* action are similar and in some respects identical to those that Defendants will assert in a motion to dismiss here, Defendants respectfully request that this Court continue further proceedings in this action pending a disposition of Defendants' motion to dismiss the *Daobin* action. Such an approach would promote efficiency, reduce wasteful and duplicative efforts by the parties and the Court, and avoid the risk of inconsistent adjudications. Indeed, international law claims under the ATS and TVPA in this action, as well as the state common law claims for assault, battery, and like, are also at issue in *Daobin*, and the alleged wrongdoing in this action—the provision of internet routers and related equipment and services to the government of China for the purpose of facilitating the Chinese government's construction of the "Golden Shield" internet backbone, allegedly with knowledge that the Chinese government would seek to use the "Golden Shield" to commit international law violations in China—are nearly identical to those alleged in *Daobin*.

1  Defendants are available to discuss these issues during the scheduled case management
2  conference before Your Honor.

3  **B. Plaintiffs' Statement**. Plaintiffs do not share Defendants' view that Court should
4  "continue further proceedings [in this action] pending a disposition of Defendants' motion to
5  dismiss in the *Daobin* action." Plaintiffs previously described to this Court in its Opposition to
6  Notice of Pendency of Related Action filed on August 4, 2011 (Dkt No. 48), that this action and
7  Daobin are legally and factually fundamentally unrelated. As has already been alleged, the
8  Plaintiffs in this case are monitored, identified, located, interrogated, forcibly converted and in
9  other ways persecuted via totally distinct Golden Shield applications that Cisco designed
10 specifically to enable the CCP to suppress Falun Gong. Available evidence includes hundreds of
11 Cisco internal files and reports that describe high-level designs developed solely suppress Falun
12 Gong, as well as witnesses, including several experts, whose testimony is primarily relevant to the
13 ongoing religious persecution at issue in this action. The Plaintiffs in *Daobin* are all high profile
14 political activists, known to Chinese authorities due to their conspicuous dissident activities and
15 publications under their real names. They are not subject to the highly specialized and unique
16 forms of human rights abuse tailored by Chinese security forces for the forced conversion of
17 Falun Gong adherents. In addition, Plaintiffs in this action raise different federal and state claims
18 and have brought this action on behalf of a class. Plaintiffs here have patiently awaited the
19 resolution of *Kiobel* at the Supreme Court so that they may proceed with their action. To
20 countenance another delay in this action will violate their Due Process rights, would not conserve
21 judicial resources, and puts Plaintiffs in China at further risk of pressure and intimidation from
22 local authorities. Therefore Plaintiffs respectfully renew their request that no stay be granted on
23 account of briefing in *Daobin*.

24 **15. NARROWING OF ISSUES:** Defendants contend that discovery should remain stayed
25 until their motion to dismiss is resolved. The Parties thus did not discuss narrowing of issues.
26 **16. EXPEDITED SCHEDULE:** The Parties agree that this case is not suitable for handling
27 on an expedited basis with streamlined procedures.
28 **17. SCHEDULING:** Defendants contend that discovery should remain stayed until their

motion to dismiss is resolved. The parties' proposed schedule is set forth below.

18. **TRIAL**: Plaintiffs have demanded a jury trial. Defendants contend that availability of a jury trial will depend on the resolution of Defendants' motion to dismiss. Accordingly, the Parties did not discuss the expected length of trial.

19. **PARTIES' PROPOSED SCHEDULE**: The Parties agree to brief Plaintiffs' motion to amend as follows: August 1, 2013 (opening); August 15, 2013 (opposition); August 29 (reply). Subject to modification in light of the Court's further decisions, the Parties also agree that the discovery period should close one year following resolution of Defendants' motion to dismiss; that dispositive motions shall be filed three months after the discovery cutoff; that the Parties shall attend a pretrial conference two weeks after the resolution of dispositive motions subject to the Court's schedule; and that trial shall commence two weeks following the pretrial conference subject to the Court's schedule. Additional dates on which the Parties disagree follow below.

   A.  **Plaintiffs' Statement.** Plaintiffs' propose the following dates:
- Dispositive Motions:
  - Defendants' Motion to Dismiss: File six weeks resolution of Motion to Amend.
  - Plaintiffs' Opposition to Motion to Dismiss: File six weeks after Defendants file Motion to Dismiss.
  - Defendants' Reply Brief: File two weeks after Plaintiffs file Opposition Brief.
  - Oral Argument Requested: Three-four weeks after Defendants file Reply Brief.
  - Motions for Class Cert: Three months following resolution of Motion to Dismiss
- Designation of Experts:
  - Class certification expert designation: Two months following resolution of Motion to Dismiss
  - Remaining expert designation: Nine months following resolution of Motion to Dismiss

   B.  **Defendants' Statement**. Defendants propose the following dates:

| Motion to dismiss – opening | 60 days following resolution of motion to amend |
| Motion to dismiss – opposition | 60 days following opening brief |

- 13 -

| Motion to dismiss – reply | 60 days following opposition brief |
| Designation of experts | 9 months following resolution of motion to dismiss |

20. **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**: The Parties have filed Certifications asserting that there was no person or entity other than the named parties with an interest that could be substantially affected by the outcome of the proceeding.

DATED: July 12, 2013

SCHWARCZ, RIMBERG, BOYD & RADER, LLP

By:  /s/ K. Lee Boyd
   K. Lee Boyd, Esq.

HUMAN RIGHTS LAW FOUNDATION

By:  /s/ Terri E. Marsh
   Terri E. Marsh, Esq.* (*pro hac vice*)

   Attorneys for Plaintiffs

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:  /s/ Kathleen M. Sullivan
   Kathleen M. Sullivan, Esq.*
   Faith E. Gay, Esq.
   Isaac Nesser, Esq.

   Attorneys for Defendants

* I have obtained signatory's consent to file this Joint Case Management Statement.

- 14 -
JOINT CASE MANAGEMENT STATEMENT
Case No. 5:11-cv-02449-EJD-PSG