KATHRYN LEE BOYD, ESQ. (SBN 189496)
lboyd@srbr-law.com
RAJIKA L. SHAH, ESQ. (SBN 232994)
rshah@srbr-law.com
**SCHWARCZ, RIMBERG, BOYD & RADER, LLP**
6310 San Vicente Boulevard, Suite 360
Los Angeles, California 90048
Phone: (323) 302-9488; Fax: (323) 931-4990

TERRI MARSH, ESQ. (*pro hac vice*)
terri.marsh@hrlf.net
JORDAN BERMAN, ESQ. (*pro hac vice*)
Jordan.Berman.HRLF@gmail.com
**HUMAN RIGHTS LAW FOUNDATION**
1615 L Street NW, Suite 1100
Washington, D.C. 20036
Phone: (202) 697-3858; Fax: (202) 355-6701
Attorneys for PLAINTIFFS

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| DOE I, DOE II, Ivy HE, DOE III, DOE IV, DOE V, DOE VI, ROE VII, Charles LEE, ROE VIII, and LIU Guifu,<br><br>Plaintiffs,<br>vs.<br><br>CISCO SYSTEMS, INC., John CHAMBERS, Thomas LAM, Owen CHAN, Fredy CHEUNG, and DOES 1-100,<br><br>Defendants. | Case No. 5:11-cv-02449-EJD-PSGx<br><br>Assigned to the Honorable Edward J. Davila, U.S.D.J.<br><br>**DECLARATION OF TERRI MARSH IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>Action Filed: May 19, 2011<br>FAC Filed: Sept. 2, 2011<br>Hearing: September 20, 2013<br>Time: 9:00 a.m.<br>Courtroom: 4, 5th Floor |

## DECLARATION OF TERRI MARSH

I, TERRI MARSH, declare:

1. I am the lead attorney for the Plaintiffs in the above-entitled case and make this Declaration in support of Plaintiffs' Motion for Leave to File a Second Amended Complaint. I am an active member in good standing of the D.C. State Bar and the federal bars of the Northern District of Illinois and the District of Columbia, the bars of the First Circuit, Second Circuit, Seventh Circuit, and Supreme Court of the United States of America. I directed a Youth Court diversion program for first time juvenile offenders in the District of Columbia in connection with my service as a defense attorney. Since 2000, I have represented victims of torture and persecution in United States District Courts, including the filing of numerous cases under the Alien Tort Statute and the Torture Victim Protection Act. I am now the Executive Director and Senior Litigation partner of the Human Rights Law Foundation ("HRLF"), launched in 2005. As such, I coordinate and manage the legal and policy work of the Foundation, litigating human rights cases in the US and assisting with cases filed abroad on behalf of dissidents and persecuted groups from China. HRLF also advocates for dissidents in China through human rights reports and projects. I am also the author of numerous works on the state of human rights and law in China, and chaired a 2010 panel at Harvard Law School, "Seeking Corporate Responsibility / Human Rights: Everyone's Business."

2. This is an action for violations of international law, under both direct and secondary theories of liability, brought under the Alien Tort Statute ("ATS"). The violations addressed include torture, prolonged arbitrary detention, extrajudicial killing, and forced labor. Related violations are alleged under California state law and under the Torture Victim Protection Act ("TVPA").

3. This action was on hold from November 9, 2011 to July 16, 2013, pending the resolution of *Kiobel v. Royal Dutch Shell Petroleum*, 569 U.S. ____ (slip op.), 133 S.Ct. 1659 (2013) (See Dkt. No. 79, 100). Plaintiffs now seek to amend based in part on the disposition of *Kiobel*, which outlined a new standard for extraterritorial recognition of ATS claims, and in part based on evidence newly discovered during the intervening period.

- 1 -
DECL. OF TERRI MARSH IN SUPPORT OF PLAINTIFFS' MOT. FOR LEAVE TO FILE A SECOND AMENDED COMPL
Case No. 5:11-cv-02449-EJD-PSG

4. New evidence was discovered during our evidence gathering efforts related to the key issues raised in *Kiobel*. After *Kiobel*, conduct and direct actions by Cisco Systems, Inc. ("Cisco") and the other Defendants in San Jose became legally relevant.

5. As part of our due diligence in evidence gathering related to the key issues of *Kiobel*, Plaintiffs attorneys' retained the services of new staff members and others engaged in evidentiary research.

6. The new staff members included Dr. Can Sun, J.D., Ph.D. Dr. Sun's expertise in technology and Chinese implementation of high-tech systems, alongside his language abilities and legal knowledge, uniquely qualified him to conduct such research and evidence gathering. As the editor-in-chief of the Yale Law and Technology Journal, a Princeton Ph.D. graduate in engineering, and, inter alia, a published translator (from Chinese to English), HRLF hired Dr. Sun while this case was on hold.

7. Based on the parties' briefs filed in *Kiobel*, Plaintiffs asked Dr. Sun to conduct electronic searches of Chinese and English-language technical materials, located on difficult to access Internet and Intranet web servers, as well as to locate Cisco training manuals, and highly rare and difficult to find Public Security Annual Reports (Chinese: *gong'an nianjian*) for the following: (1) Evidence of design, implementation and optimization activity by Cisco and especially Defendants in San Jose, that more directly tied San Jose to acts of identification, tracking, ideologically converting, capturing and isolating Falun Gong made possible via the Golden Shield, and (2) Evidence of design, implementation and optimization activity by Cisco, and especially Defendants in San Jose, that more directly tied San Jose to the alleged conduct.

8. Based on three reports Dr. Sun completed on or around April of 2012, we were able to discover and include in the [Proposed] Second Amended Complaint in greater detail the specific features developed by Cisco in San Jose, which facilitated identification, tracking, capture, detention, and ideological conversion through torture of Falun Gong adherents. See FAC, Dkt. 62-1.

9. HRLF also hired Guanghong Jin, a former professor of Political Science and human rights attorney with two decades of academic and professional experience in China. Mr.

- 2 -
DECL. OF TERRI MARSH IN SUPPORT OF PLAINTIFFS' MOT. FOR LEAVE TO FILE A SECOND AMENDED COMPL
Case No. 5:11-cv-02449-EJD-PSG

1  Jin came to the United States seeking political asylum within the last six months, and during the period of hold. He provided information regarding the unique role of the Chinese Communist Party (as opposed to People's Republic of China state apparatuses) in initiating and running all *douzheng* (persecutory) campaigns in China, throughout the history of the Chinese Communist Party, supported with detailed evidence and analysis.

10. Mr. Jin also provided evidence and information regarding the extent to which anti-Falun Gong features and functionality of the Golden Shield constituted a radical intensification and improvement of existing and earlier *douzheng* campaign practices. He also provided related evidence regarding specific human rights violations, which were preexisting features of *douzheng* campaigns, that were incorporated on a vastly increased scale and in new ways via the Golden Shield. These abuses include: (1) arbitrary prolonged confinement of Falun Gong; (2) extralegal banning and vilification of all activity identifying oneself as a Falun Gong adherent; (3) the use of torture to force conversion or renunciation of affiliation with a targeted minority group; and (4) other related means of intimidation and human rights abuse, and violations of international, California, and Chinese law, alleged in the [Proposed] Second Amended Complaint.

11. New evidence was also discovered during the period of stay by Charles Yu, a Chinese technology expert, with direct experience with the Golden Shield project, who had been imprisoned in China throughout the proceedings of the case. Mr. Yu is currently seeking asylum in the United States after being released from prison in China and escaping to the United States in May, 2013. He provided to Plaintiffs new evidence regarding: (1) the role of the Chinese Communist Party in dealing directly with Cisco headquarters in San Jose to plan and carry out the Golden Shield project; (2) the specific course of dealing by which Cisco San Jose and Chinese Communist Party leaders planned and carried out the Golden Shield project, including the importance of developing mutually beneficial interpersonal relationships; (3) the audiences of Cisco marketing materials used for or in relation to the Golden Shield project; and (4) the degree to which technical requirements of the Golden Shield's anti-Falun Gong features depended upon specific, purposeful design to meet such objectives.

12. Finally, evidence was provided by Peng Yongfeng, a Chinese human rights lawyer

who obtained asylum in the United States due to his discovery of the threat of imminent detention based on his representation of Falun Gong adherents. Mr. Peng applied for asylum in March, 2011. He contacted Plaintiffs' lawyers with evidence and related information regarding the Golden Shield use by Chinese security forces. This information was related to: (1) Mr. Peng's contact with security officers in China whom he knew well and who provided information regarding the Golden Shield's use in China to target Falun Gong adherents. Mr. Peng also provided us with official documents relating to this issue; (2) more specific information regarding the role of the Chinese Communist Party in administering the persecutory campaign against Falun Gong; and (3) a detailed analysis of the operation of Chinese Reeducation Through Labor facilities (Laojiao), such as those in which Plaintiffs were detained.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 1st day of August 2013, at Washington, D.C.

_____
Terri E. Marsh, Esq.

- 4 -
DECL. OF TERRI MARSH IN SUPPORT OF PLAINTIFFS' MOT. FOR LEAVE TO FILE A SECOND AMENDED COMPL
Case No. 5:11-cv-02449-EJD-PSG