QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kathleen M. Sullivan (CA Bar No. 242261)
  kathleensullivan@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood City, California 94065
Telephone:    (650) 801-5000
Facsimile:     (650) 801-5100

  Faith E. Gay (*pro hac vice*)
  faithgay@quinnemanuel.com
  Isaac Nesser (*pro hac vice*)
  isaacnesser@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:    (212) 849-7000
Facsimile:     (212) 849-7100

Attorneys for the Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| Doe I, Doe II, Ivy He, Doe III, Doe IV, Doe V, Doe VI, Roe VII, Charles Lee, Roe VIII, Liu Guifu, and those individuals similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Cisco Systems, Inc., John Chambers, Thomas Lam, Owen Chan, Fredy Cheung, and Does 1-100,<br><br>Defendants. | Case No. 5:11-cv-02449-EJD-PSGx<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>Hearing date: September 20, 2013<br>Time: 10:00 a.m.<br><br>Action Filed: May 19, 2011<br>Judge: Hon. Edward J. Davila<br>Dept: Courtroom 4, 5th Floor |
|---|---|

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.   THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE AMENDMENT IS FUTILE, BELATED, AND PREJUDICIAL ................................ 4

II.  IN THE ALTERNATIVE, THE ALLEGATIONS CONCERNING NEWSPAPER ARTICLES AND OTHER THIRD-PARTY REPORTS SHOULD BE STRUCK ............. 8

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

Cases

*Abagninin v. AMVAC Chem. Corp.*,
    545 F.3d 733 (9th Cir. 2008) .................................................................................................. 5

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
    781 F.2d 1393 (9th Cir. 1986) ................................................................................................ 5

*Al Shimari v. CACI Int'l, Inc.*,
    --- F. Supp. 2d ---, 2013 WL 3229720 (E.D. Va. June 25, 2013) ......................................... 7

*Allen v. City of Beverly Hills*,
    911 F.2d 367 (9th Cir. 1990) .................................................................................................. 5

*AmerisourceBergen Corp. v. Dialysist West Inc.*,
    465 F.3d 946 (9th Cir. 2006) .................................................................................................. 5

*California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*,
    358 F.3d 661 (9th Cir. 2004) .................................................................................................. 5

*Carrico v. City & County of San Francisco*,
    656 F.3d 1002 (9th Cir. 2011) ................................................................................................ 4

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) .................................................................................................. 4

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ................................................................................................ 4

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................................................ 4, 5

*Forsyth v. Humana, Inc.*,
    114 F.3d 1467 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999) ................................................... 4

*Giraldo v. Drummond Co.*,
    No. 09-CV-1041, 2013 WL 3873960 (N.D. Ala. July 25, 2013) .......................................... 6

*Gordon v. City of Oakland*,
    627 F.3d 1092 (9th Cir. 2010) ................................................................................................ 4

*In re Harmonic, Inc. Secs. Litig.*,
    No. C 00-2287 PJH, 2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ..................................... 8

*Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) ............................................................................................ 4, 5

*Janicki Logging Co. v. Mateer*,
    42 F.3d 561 (9th Cir. 1994) .................................................................................................... 5

- ii -    Case No. 5:11-cv-02449-EJD-PSGx
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

*Johnson v. Am. Airlines, Inc.*,
    834 F.2d 721 (9th Cir. 1987) ............................................................................................... 5

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982) ............................................................................................. 5

*Kiobel v. Royal Dutch Petroleum Co.*,
    132 S. Ct. 472 (2011) .......................................................................................................... 3

*Kiobel v. Royal Dutch Petroleum Co.*,
    133 S. Ct. 1659 (2013) ......................................................................................... 1, 3, 4, 6, 7

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) ............................................................................................... 4

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ............................................................................................... 5

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) ............................................................................................. 5

*Naas v. Stolman*,
    130 F.3d 892 (9th Cir. 1997) ............................................................................................... 4

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*,
    700 F.3d 829 (6th Cir. 2012) ............................................................................................... 9

*RDF Media Ltd. v. Fox Broad. Co.*,
    372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................................. 8

*Roth v. Garcia Marquez*,
    942 F.2d 617 (9th Cir. 1991) ............................................................................................... 5

*Sarei v. Rio Tinto, PLC*,
    --- F.3d ---, 2013 WL 3357740 (9th Cir. June 28, 2013) (en banc) ..................................... 6

*Sepehry-Fard v. Bank of New York Mellon, N.A.*,
    No. 5:12-CV-1260 (LHK), 2013 WL 4030837 (N.D. Cal. Aug. 5, 2013) ........................ 5, 7

*Survivor Productions LLC v. Fox Broadcasting Co.*,
    No. CV01-3234 LGB (SHX), 2001 WL 35829267 (C.D. Cal. June 12, 2001) .............. 8, 10

<u>Statutes and Rules</u>

28 U.S.C. 1350 ................................................................................................................................ 2

28 U.S.C. 1350 *note* ....................................................................................................................... 2

Fed. R. Civ. P. 15(a) .................................................................................................................... 4, 5

## INTRODUCTION

Plaintiffs allege in their proposed second amended complaint ("SAC"), as they have in the two prior iterations of their complaint, that they suffered physical injury in the People's Republic of China at the hands of Chinese public officials. Although Cisco has no wish to minimize the heinous acts that Plaintiffs allege unidentified Chinese officials inflicted upon them, their allegations have no connection to Cisco, its executives, or the United States. Cisco demonstrated the myriad deficiencies in Plaintiffs' Complaint in a 48-page motion to dismiss filed in August 2011, and a 50-page motion to dismiss Plaintiffs' First Amended Complaint ("FAC") filed in September 2011. Plaintiffs, having never responded to either motion, are now proposing to put Cisco to the burden of preparing yet a *third* motion to dismiss, as to claims that are as fundamentally flawed now as they were two years ago, but which Plaintiffs now propose to recast in the form of the unwieldy and redundant 435-paragraph, 85-page proposed SAC. Plaintiffs' latest proposed amendment should be denied as futile, belated, and prejudicial.

As Cisco demonstrated in its prior motions, Plaintiffs' theory of the case is fundamentally flawed insofar as Plaintiffs have never alleged, and cannot allege, intent, causation, a territorial connection to the United States, or the other requisite elements of their claims. Moreover, as Cisco has consistently argued and the U.S. Supreme Court recently ruled decisively in *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), the Alien Tort Statute, which is at the core of Plaintiffs' claims, does not apply to conduct that, as here, occurred entirely within the borders of a foreign sovereign nation. Plaintiffs have proposed to re-amend their complaint in an effort to survive otherwise certain dismissal under *Kiobel,* but those amendments are cosmetic and futile. The SAC, like the FAC and the initial Complaint filed two years ago, concerns conduct and injury in China that do not "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." *Id.* at 1669. The proposed amendments do not and cannot cure that deficiency.

Plaintiffs, who have already had two bites at the apple, should not be granted a third. The motion for leave to amend should be denied. In the alternative, as discussed in Section II below, leave to amend should at minimum be denied as to the SAC's impermissible attempt to satisfy the

1  "intent" and "knowledge" elements of Plaintiffs' claims by citation to generic, 14-year-old
2  newspaper articles concerning Chinese authorities' mistreatment of Falun Gong participants.
3  Such allegations, like others in the proposed SAC, reflect Plaintiffs' futile attempt to inject this
4  Court into a nonjusticiable political campaign concerning alleged human rights violations in
5  China, which has no relevant connection to Cisco and no place in this Court.

## BACKGROUND

7  Plaintiffs filed their initial complaint on May 19, 2011.  (Dkt. 1.)  The gravamen of the
8  Complaint was its assertion of putative international law claims under the Alien Tort Statute (28
9  U.S.C. 1350) ("ATS") and similar claims under the Torture Victim Protection Act (28 U.S.C.
10  1350 *note*) ("TVPA"), all premised on physical injuries that Plaintiffs allegedly suffered at the
11  hands of Chinese authorities in China.

12  Defendants moved to dismiss the initial Complaint on August 4, 2011.  (Dkt. 49.)  The
13  motion argued, *inter alia*, that Plaintiffs' ATS claims should be dismissed because the ATS does
14  not provide jurisdiction or a cause of action for the purely extraterritorial claims at issue.  (*See id.*
15  at 19-21 ("The ATS claims should be dismissed for the independent reason that they concern
16  purely extraterritorial conduct and effects.  The Complaint alleges injuries suffered in China, at the
17  hands of the Chinese police and justice system, using routers and other internet hardware located
18  in China, which were allegedly sourced by Cisco employees operating in China.").)  The motion
19  also sought dismissal of the claims in the Complaint because Plaintiffs had failed to allege facts
20  supporting the requisite intent by Defendants or causation as to Plaintiffs' alleged injuries:  "The
21  Complaint nowhere allege[d] any facts suggesting that Cisco or its employees ever met, interacted
22  with, or otherwise knew about the individual Plaintiffs; that Cisco knew or intended that its
23  technology would be used by Chinese authorities to injure Plaintiffs; or that Cisco knew of, or
24  participated in, Chinese authorities' alleged detention or persecution of Plaintiffs or the 'many
25  thousands' of other Falun Gong practitioners located throughout China who the Plaintiffs seek to
26  represent on a classwide basis."  (*Id.* at 1 (citing Compl. ¶ 225).)

27  Rather than oppose the motion to dismiss, on September 2, 2011, Plaintiffs filed the FAC.
28  (Dkt. 61, 62.)  The FAC added no plausible allegations supporting a connection between

1  Plaintiffs' claims or injuries and the territorial United States, Defendants' *mens rea* to facilitate
2  human rights abuses, or any causal link between Defendants' alleged sale of networking
3  equipment and services and the alleged injuries incurred by the Plaintiffs.  Nor did the FAC
4  address any of the other deficiencies identified in Defendants' motion to dismiss.  The amendment
5  did, however, moot Defendants' then-pending motion to dismiss, necessitating further delay.

6  Defendants moved to dismiss the FAC, filing their motion and comprehensive
7  memorandum on September 23, 2011. (Dkt. 67.)  Defendants argued that Plaintiffs' ATS claims
8  should be dismissed on all the same grounds identified in Defendants' initial motion, including
9  that the ATS does not provide jurisdiction or a cause of action for extraterritorial claims. (*See id.*
10 at 20-21.)  Indeed, the motion requested dismissal *with prejudice* because Plaintiffs had already
11 had the opportunity to allege a plausible claim in the FAC, but failed to do so. (*Id.* at 3.)

12 On October 17, 2011, before Plaintiffs had filed their opposition to Defendants' second
13 motion to dismiss, the Supreme Court of the United States granted a petition for a writ of certiorari
14 in *Kiobel v. Royal Dutch Petroleum Co.  See* 132 S. Ct. 472 (2011).  The questions presented in
15 *Kiobel* were directly relevant to the viability of this action:  (1) Whether ATS claims can be
16 asserted against corporations; and (2) Whether the availability of ATS claims against corporations
17 is properly resolved as a matter of subject matter jurisdiction versus as a merits consideration. *See*
18 *Kiobel*, No. 10-1491, Questions Presented, *available at* http://www.supremecourt.gov/qp/10-
19 01491qp.pdf ("Questions Presented").  On November 9, 2011, this Court held that the outcome in
20 *Kiobel* would be relevant here, and terminated Defendants' motion to dismiss without prejudice
21 pending a decision in *Kiobel*. (Dkt. 79.)

22 The Supreme Court heard argument in *Kiobel* on February 28, 2012, focused on the issue
23 of whether the ATS provides jurisdiction for claims against corporations.  *See* 133 S. Ct. at 1663.
24 However, on March 5, 2012, the Supreme Court issued an order requesting supplemental briefing
25 and argument on the separate question "whether and under what circumstances the [ATS] allows
26 courts to recognize a cause of action for violations of the law of nations occurring within the
27 territory of a sovereign other than the United States."  *See id.*  The Court heard argument on that
28 issue on October 1, 2012, and issued its decision on April 17, 2013.  The decision definitively

holds that claims under the ATS may not "seek[] relief for violations of the law of nations occurring outside the United States," reasoning that the longstanding "presumption against extraterritoriality applies to claims under the ATS" and that nothing in the text, history or purpose of the statute "rebuts that presumption." *Id.* at 1669.

Although *Kiobel* was decided on April 17, 2013, Plaintiffs took no action for three and a half months thereafter, until August 1, 2013, when they filed the instant Motion for leave to amend. (Dkt. 101.)

## ARGUMENT

### I. THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE AMENDMENT IS FUTILE, BELATED, AND PREJUDICIAL

Although Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," leave to amend "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Rather, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original). These factors warrant dismissal here:

*Futility And Repeated Failure To Cure Deficiencies By Amendments.* Leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (citing *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010)); *see*, *e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011) (denying leave to amend where amendment would be futile); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (denying leave to amend where the "potential amended claim would still be barred by the statute of limitations"). Futility is found when amendments do not adequately plead a cause of action and could not survive dismissal. *See*, *e.g.*, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999) (amendment futile where it would be preempted by federal law), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d

1   896 (9th Cir. 2012).  Futility also "includes the inevitability of a claim's defeat on summary
2   judgment." *California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*,
3   358 F.3d 661, 673 (9th Cir. 2004) (quoting *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th
4   Cir. 1987)); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 628-29 (9th Cir. 1991).  The
5   "repeated failure to cure a complaint's deficiencies by previous amendment is reason enough to
6   deny leave to amend." *Sepehry-Fard v. Bank of New York Mellon, N.A.*, No. 5:12-CV-1260
7   (LHK), 2013 WL 4030837, at *3 (N.D. Cal. Aug. 5, 2013) (citing *Abagninin v. AMVAC Chem.
8   Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (citing in turn *Foman*, 371 U.S. at 182; *Allen v. City of
9   Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990))).

10         *Undue Delay and Prejudice*.  A party who delays in alleging facts or claims it knew or
11  should have known at the outset of the litigation, thereby causing prejudice, is not entitled to the
12  benefits of Rule 15(a)'s liberal amendment policy.  *See Jordan v. County of Los Angeles*, 669 F.2d
13  1311, 1324 (9th Cir. 1982)  (motion to amend may be denied for lack of diligence), *vacated on
14  other grounds*, 459 U.S. 810 (1982); *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781
15  F.2d 1393, 1398 (9th Cir. 1986) (affirming denial of leave to amend and noting that late
16  amendments "are not reviewed favorably when the facts and the theory have been known to the
17  party seeking amendment since the inception of the cause of action"); *see also*, *e.g.*, *Janicki
18  Logging Co. v. Mateer*, 42 F.3d 561, 566-67 (9th Cir. 1994); *Morongo Band of Mission Indians v.
19  Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (denying leave to amend where the desired amendment
20  was untimely and prejudicial); *Jackson*, 902 F.2d at 1387-89.  Although there is no hard-and-fast
21  rule, the Ninth Circuit has found that delays as short as six months warrant denying leave to
22  amend.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988) (six-month delay);
23  *Jackson*, 902 F.2d at 1388 (seven months); *AmerisourceBergen Corp. v. Dialysist West Inc.*, 465
24  F.3d 946, 953 (9th Cir. 2006) (15 months).

25         The foregoing factors warrant this Court's exercise of its discretion to deny Plaintiffs'
26  motion to amend.  *First*, the proposed amendments reflect a futile attempt to plead a territorial
27  connection to the United States and remedy the other myriad deficiencies in the initial Complaint
28  and the FAC.  The SAC makes conclusory allegations concerning management, planning, and

1  marketing oversight—*e.g.*, that "[t]he company's success in the highly competitive and lucrative
2  Golden Shield market was due to the considerable and essential involvement of its San Jose
3  headquarters office" (SAC ¶ 126) and that, "[p]rior to initiating the Golden Shield project, the
4  Defendants, from their headquarters in San Jose, planned in minute detail their market strategy for
5  China" (*id.* ¶ 128))—but nothing in the proposed SAC sets forth with any factual particularity how
6  any such alleged San Jose conduct caused the physical injuries allegedly inflicted by Chinese
7  residents against Chinese residents in China, how the products that Defendants sold in China were
8  the cause of physical injuries inflicted by Chinese authorities on the Plaintiffs in China, or how
9  Defendants manifested any of the requisite *mens rea* to facilitate those injuries.  Despite the
10 proposed SAC's many paragraphs of redundant and irrelevant technical detail concerning the
11 alleged architecture of the Golden Shield (*e.g.*, SAC ¶¶ 75-87, 92-98), the theory of this
12 litigation—that Cisco can be held liable in a U.S. court for selling networking equipment and
13 services to Chinese public agencies in support of their enforcement of Chinese law—is a theory
14 foreclosed by *Kiobel* and other authorities barring extraterritorial application of U.S. law.

15       With specific regard to the ATS, the new allegations, like the old ones, fail to "touch and
16 concern the territory of the United States . . . with sufficient force to displace the presumption
17 against extraterritorial application." *Kiobel*, 133 S. Ct. at 1669.  As *Kiobel* made clear, "mere
18 corporate presence" in the United States does not suffice to establish a U.S. corporation's
19 connection with conduct and injuries that take place solely abroad.  *Id.*  And every court to have
20 interpreted *Kiobel* to date has squarely rejected efforts, like those here, to rely upon attenuated
21 connections to United States activity in order to overcome the presumption against
22 extraterritoriality, particularly where all the alleged injuries were incurred abroad.  *See Sarei v. Rio*
23 *Tinto, PLC*, --- F.3d ---, 2013 WL 3357740, at *1 (9th Cir. June 28, 2013) (en banc) ("The parties
24 have submitted supplemental briefs on the effect of [*Kiobel*, and] . . . a majority of the en banc
25 court has voted to affirm the district court's judgment of dismissal with prejudice."); *Giraldo v.*
26 *Drummond Co.*, No. 09-CV-1041, 2013 WL 3873960, at *8 (N.D. Ala. July 25, 2013) (dismissing
27 ATS claims under *Kiobel* because (i) "[t]here is *nothing* left in this final analysis to support
28 Plaintiffs' contention that [defendant] made decisions in the United States to conspire with and aid

1 and abet the commission of war crimes in Colombia," and, independently, (ii) "where a complaint alleges activity in both foreign and domestic spheres, an extraterritorial application of a statute arises *only* if the event on which the statute *focuses* did not occur abroad," and the torts at issue that "the ATS *focuses* on [i.e., extrajudicial killings and war crimes] … occurred abroad, in Colombia, and *not* in the United States") (emphases in original, footnote omitted); *Al Shimari v. CACI Int'l, Inc.*, --- F. Supp. 2d ---, 2013 WL 3229720, at *7 (E.D. Va. June 25, 2013) (dismissing pursuant to *Kiobel* the ATS claims of Iraqi citizens concerning alleged wrongdoing by a U.S. corporation acting as a military contractor in Iraq at the Abu Ghraib prison, and explaining that "Plaintiffs are barred from asserting ATS jurisdiction because the alleged conduct giving rise to their claims occurred exclusively on foreign soil").  For this reason, Plaintiffs' proposed amendment of their ATS claims, based on physical injuries allegedly inflicted in China at the hands of Chinese authorities, is futile.

*Second*, although Defendants *two years ago* placed Plaintiffs on notice of the Complaint's failure to assert cognizable claims, including a territorial connection to the United States, Plaintiffs have still, on their proposed third version of the Complaint, failed to correct these deficiencies. (*See*, *e.g.*, Dkt. 49 at 19 ("The ATS claims should be dismissed for the independent reason that they concern purely extraterritorial conduct and effects. The Complaint alleges injuries suffered in China, at the hands of the Chinese police and justice system, using routers and other internet hardware located in China, which were allegedly sourced by Cisco employees operating in China."); Dkt. 67 (same).)  Plaintiffs' "repeated failure to cure [the] complaint's deficiencies by previous amendment is reason enough to deny leave to amend."  *Sepehry-Fard*, 2013 WL 4030837, at *3.

*Third*, Plaintiffs have delayed unduly in proposing the instant set of amendments, and have thereby caused prejudice to Defendants.  All of the new (yet still legally insufficient) allegations in the SAC could have been asserted more than two years ago, when plaintiffs first brought suit. If Plaintiffs had a basis on which to allege cognizable claims or a territorial connection to the United States, they could and should have done so two years ago, when Defendants raised this issue in (i) their motion to dismiss the initial Complaint and (ii) their motion to dismiss the FAC.  Their

1  failure to do so, if permitted, will require Defendants to incur the burden and expense of preparing
2  yet a *third* motion to dismiss, tailored to the myriad redundant allegations in what is now a 435-
3  paragraph, 85-page proposed SAC.  Although the nature of the claims in the proposed SAC and
4  the underlying legal theories have not changed, it nonetheless will require significant effort for
5  Defendants to address the proposed SAC in yet a third motion to dismiss.  Defendants should not
6  be put to that burden in the context of a set of amendments that could and should have been
7  asserted two years ago, and which are as futile now as they would have been then.

## II.   IN THE ALTERNATIVE, THE ALLEGATIONS CONCERNING NEWSPAPER ARTICLES AND OTHER THIRD-PARTY REPORTS SHOULD BE STRUCK

Although leave to amend should be denied with respect to the entirety of the proposed SAC for the reasons stated above, this Court should at minimum prohibit amendment as to the various newspaper articles and other unconfirmed third-party reports cited in the proposed SAC. (*See*, *e.g.*, SAC ¶¶ 49-51, 159-167.)

In the analogous context of motions to strike, courts have barred from complaints and other pleadings references to newspaper articles and similar unconfirmed third-party reports.  In *Survivor Productions LLC v. Fox Broadcasting Co*., No. CV01-3234 LGB (SHX), 2001 WL 35829267 (C.D. Cal. June 12, 2001), for example, the court struck allegations citing to newspaper articles, holding that that "the opinions of journalists are legally irrelevant," are "unguided by the [applicable] legal standards," and therefore are "immaterial and impertinent because they [have] no possible bearing on the controversy between the parties." *Id*. at *3.  As the court explained, such allegations are improper because of the "obvious effect of the inclusion of such articles in Plaintiffs' pleading—it lends artificial credence to the opinions contained in the articles, and gives the appearance that such opinions are legally relevant to the dispute." *Id*. at *4.  Other courts have so held.  *See*, *e.g.*, *In re Harmonic, Inc. Secs. Litig*., No. C 00-2287 PJH, 2006 WL 3591148, at *17-18 (N.D. Cal. Dec. 11, 2006) (granting motion to strike allegations of statements in press releases and other publications as irrelevant to the question of liability); *RDF Media Ltd. v. Fox Broad. Co*., 372 F. Supp. 2d 556, 567 (C.D. Cal. 2005) (granting motion to strike news articles

1  from the plaintiffs' complaint as scandalous and irrelevant to the plaintiffs' claims of copyright
2  infringement); *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC,* 700 F.3d
3  829, 834, 843 (6th Cir. 2012) (affirming dismissal of claims based on "publicly available reports,
4  newspapers, and magazines").

5        In this case, the proposed SAC cites to various news articles and other unconfirmed third-
6  party reports issued over the last fourteen years, which allegedly discuss the persecution of Falun
7  Gong adherents in China.  None of the articles cites to or discusses Cisco, as best can be discerned
8  from Plaintiffs' vague allegations, which refer among other things to "[s]everal Associated Press
9  reports . . . in 1999" (SAC ¶ 161), "[a]n article by Elisabeth Rosenthal of the New York Times in
10 1999" (*id.* ¶ 162), "further reports from the Los Angeles Times, Agence France Presse, Reuters,
11 and Fox News, in 1999 and afterward" (*id.* ¶ 163), "newspaper reports [in 2003 and 2004] about
12 the ongoing lawsuit in the Northern District of California against former Beijing mayor Liu Qi,
13 who was found liable for the torture of several Falun Gong plaintiffs in that case" (*id.* ¶ 167), and
14 reports purportedly issued by Amnesty International, Human Rights Watch, and others (*id.* ¶ 165).
15 (*See also*, *e.g.*, *id.* ¶¶ 159, 160, 164, 166.)    The proposed SAC contains little or no detail
16 concerning where these various articles and other reports might be located or what they actually
17 say—including whether their contents support Plaintiffs' characterizations.

18       Indeed, the proposed SAC cites the foregoing newspaper reports and other materials not
19 merely as historical background (itself impermissible in these circumstances, pursuant to the case
20 law cited above), but as the actual *factual support* for required elements of Plaintiffs' causes
21 action.  Plaintiffs' theory is that, because journalists fourteen years ago and afterward published
22 articles about Falun Gong (articles that the SAC nowhere alleges Cisco executives may even have
23 seen), it is plausible that Cisco employees acted with "knowledge," "intent," and the "purpose" of
24 assisting in the heinous injuries that Plaintiffs allegedly incurred at the hands of Chinese
25 authorities. (*See* SAC 37 at "E"; *id*. ¶ 169 ("Based on all of the above . . . Defendants knew that a
26 central purpose of the Golden Shield[] . . . was the facilitation and advancement of the persecution
27 of Falun Gong, and that this persecution routinely included widespread acts of torture.").)  That
28 implication is implausible and indeed offensive.  Plaintiffs' claims must be decided based upon

the evidence in this case, "unaided by the opinions of journalists and industry observers." *Survivor Prods.*, 2001 WL 35829267, at *3. Leave to amend should at minimum be denied with respect to these implausible, prejudicial, inflammatory and redundant allegations.

## CONCLUSION

Plaintiffs' motion for leave to file a Second Amended Complaint should be denied.

DATED: New York, New York
August 15, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Kathleen M. Sullivan
Kathleen M. Sullivan
Faith E. Gay
Isaac Nesser

51 Madison Avenue, 22d Floor,
New York, New York  10010-1601
(212) 849-7000

*Attorneys for the Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's ECF System.

Dated: August 15, 2013

                                          /s/  Isaac Nesser
                                            ISAAC NESSER