KATHRYN LEE CRAWFORD-BOYD, ESQ. (SBN 189496)
   lboyd@srbr-law.com
RAJIKA L. SHAH, ESQ. (SBN 232994)
   rshah@srbr-law.com
**SCHWARCZ, RIMBERG, BOYD & RADER, LLP**
6310 San Vicente Boulevard, Suite 360
Los Angeles, California 90048
Phone: (323) 302-9488, Fax: (323) 931-4990

TERRI MARSH, ESQ. (*pro hac vice*)
   terri.marsh@hrlf.net
JORDAN S. BERMAN, ESQ. (*pro hac vice*)
   jsberman@gmail.com
**HUMAN RIGHTS LAW FOUNDATION**
1615 L Street NW, Suite 1100
Washington, D.C.  20036
Phone: (202) 697-3858, Fax: (323) 931-4990

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| DOE I, DOE II, Ivy HE, DOE III, DOE IV, DOE V, DOE VI, ROE VII, Charles LEE, ROE VIII, DOE IX, LIU Guifu, WANG Weiyu, and those individual similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CISCO SYSTEMS, INC., John CHAMBERS, Fredy CHEUNG, and DOES 1-100,<br><br>Defendants. | Case No. 5:11-cv-02449-EJD-PSGx<br>Assigned to the Hon.  Edward J. Davila, U.S.D.J.<br><br>**DECLARATION OF RAJIKA SHAH IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE REQUEST FOR LEAVE TO FILE SUR-REPLY**<br><br>SAC Filed: September 18, 2013 |

## DECLARATION OF RAJIKA SHAH

I, Rajika Shah, declare as follows:

1. I am an attorney at law duly licensed to practice law in the State of California and admitted to practice before the U.S. District Court for the Northern District of California. I am an associate with the law firm of Schwarcz, Rimberg, Boyd & Rader, LLP ("SRBR"), one of the attorneys of record for Plaintiffs. I am one of the attorneys responsible for this file and have personal knowledge of the facts stated herein, and if called as a witness I would and could competently testify thereto.

2. On February 20, 2014, my co-counsel Jordan Berman contacted counsel for Defendants by email with a copy to me, to inquire whether Defendants would stipulate to allow Plaintiffs to file a Sur-Reply in Support of Opposition to Defendants' Motion to Dismiss the Second Amended Complaint. On February 21, 2014, counsel for Defendants declined to so stipulate.

3. Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' proposed Sur-Reply.

I declare under penalty of perjury of the laws of the United States that the forgoing is true and correct.

Executed this twenty-first day of February 2014, at Los Angeles, California.

_____
Rajika Shah

SCHWARCZ, RIMBERG,
BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1

DECLARATION OF RAJIKA SHAH IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE REQUEST FOR LEAVE TO FILE SUR-REPLY
Case No. 5:11-cv-02449-EJD-PSGx

# EXHIBIT A

KATHRYN LEE CRAWFORD-BOYD, ESQ. (SBN 189496)
   lboyd@srbr-law.com
RAJIKA L. SHAH, ESQ. (SBN 232994)
   rshah@srbr-law.com
**SCHWARCZ, RIMBERG, BOYD & RADER, LLP**
6310 San Vicente Boulevard, Suite 360
Los Angeles, California 90048
Phone: (323) 302-9488, Fax: (323) 931-4990

TERRI MARSH, ESQ. (*pro hac vice*)
   terri.marsh@hrlf.net
JORDAN S. BERMAN, ESQ. (*pro hac vice*)
   jsberman@gmail.com
**HUMAN RIGHTS LAW FOUNDATION**
1615 L Street NW, Suite 1100
Washington, D.C. 20036
Phone: (202) 697-3858, Fax: (323) 931-4990

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| DOE I, DOE II, Ivy HE, DOE III, DOE IV, DOE V, DOE VI, ROE VII, Charles LEE, ROE VIII, DOE IX, LIU Guifu, WANG Weiyu, and those individual similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CISCO SYSTEMS, INC., John CHAMBERS, Fredy CHEUNG, and DOES 1-100,<br><br>Defendants. | Case No. 5:11-cv-02449-EJD-PSGx<br>Assigned to the Hon. Edward J. Davila, U.S.D.J.<br><br>**SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>SAC Filed: September 18, 2013 |

SCHWARCZ, RIMBERG,
BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Exhibit A
CASE NO. 5:11-cv-02449-EJD-PSGx

Plaintiffs respectfully submit this Sur-Reply for the purpose of addressing arguments raised for the first time in Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint ("Reply"), as set forth below.

**I.       Defendants' Reply Relies On Not-Previously-Cited And Repudiated Authority**

In their Reply, Defendants raise for the first time arguments based on an International Criminal Tribunal for the Former Yugoslavia ("ICTY") decision, *Prosecutor v. Perišić*, Case No. IT–04–81–A Judgment (ICTY Feb. 28, 2013), a case available at the time of their original Motion.  Reply at 7-8.  Specifically, now that *Doe v. Nestle*, 748 F. Supp. 2d 1057 (C.D. Cal. 2010), has been vacated, Defendants instead for the first time rely on *Perišić* to argue at length that the *actus reus* of aiding and abetting requires specific direction.  However, Defendants do not mention that a more recent ICTY appeals decision—available at the time of Defendants' Reply— "unequivocally rejects the approach adopted in the *Perišić* Appeal Judgement" that specific direction is even an implicit element of aiding and abetting, "as it is in direct and material conflict with the prevailing jurisprudence on the *actus reus* of aiding and abetting liability and with customary international law in this regard."  *Prosecutor v. Šainović,* Case No. IT-05-87-A Judgment, ¶ 1650 (ICTY Jan. 23, 2014).[1]

In *Šainović,* the Appeals Chamber confirmed that defendant Lazarević was individually responsible for aiding and abetting crimes against humanity. In its decision, the Chamber surveyed standards for aiding and abetting in previous ICTY cases, Nuremburg cases, civil and common law systems, and international instruments, including the Rome Statute. ¶¶ 1617-48. The Chamber unequivocally held that "'specific direction' is not an essential ingredient of the *actus reus* of aiding and abetting, accurately reflecting customary international law and the legal standard that has been constantly and consistently applied in determining aiding and abetting liability." ¶ 1650 (internal quotations omitted). The Ninth Circuit in *Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 751 (9th Cir. 2011) (vacated on other grounds) drew from international law the

---

[1] Even if *Perišić* were good law, the SAC makes clear that Defendants' acts were specifically directed to assist and further the ideological conversion through torture and other extra-legal offenses alleged. *See e.g.,* Opp. Br. at 4-6, 23 and n. 42.

1

SCHWARCZ, RIMBERG,
BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 5:11-cv-02449-EJD-PSGx
Exhibit A

1  standards for imposing accessorial liability for claims under the ATS. At the time, it was unclear
2  whether "specific direction" was a required part of *actus reus* under ICTY jurisprudence. That
3  question has been unequivocally answered by the Appeals Chamber in *Šainović.*

4  **II.      Defendants' Reply For The First Time Conflates "Act Of State" And "State Action"**

5  In a manner unforeseeable to Plaintiffs—and not supported by any authority—Defendants
6  now conflate jurisdictional pleading requirements of the TVPA and ATS requiring that a
7  defendant carry out some (but not all) human rights abuses under "actual or apparent state
8  authority" or under "color of law," *e.g.*, in concert with officers acting *ultra vires*, with an entirely
9  different defense based on the prudential doctrine of act of state. Reply at 11.  As the sole support
10 for their position Defendants cite *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252 (11th Cir. 2009),
11 which nowhere supports their efforts to graft act of state requirements onto state action.[2]  "State
12 action" is never equated with the act of state doctrine in *Sinaltrainal* or any relevant opinion. In
13 addition, state action and act of state requirements are not analyzed in the same way. Plaintiffs
14 have set forth the requirements for state action in their Opposition Brief by alleging that
15 Defendants are secondarily liable for acting with Public Security officers as state actors (Opp. Br.
16 at 29),[3] and have explained that the act of state doctrine cannot be met where the acts complained
17 of are violations of *jus cogens* and *ultra vires*.

18 Further, Defendants have the burden of proving the applicability of the act of state
19 doctrine under the *Banco Nacional de Cuba v. Sabbatino,* three-factor test. 376 U.S. 398, 428
20 (1964). *See* Opp. Br. at 40-43. Contrary to the jurisdictional pleading requirements for Plaintiffs,
21 in order to assert an act of state defense, this Court has held that Defendants must show (1) that
22 the low-level official acted pursuant to an order; (2) that the order originated from an official with
23 the authority to bind the state; and (3) that the order was consistent with the laws and policies of

---

[2] The Court did not mention the prudential act of state doctrine in this case, much less discuss any connection it may have to the legal standards of under color of law legal requirements under the ATS/TVPA. *Id.* at 1266.

[3] *See, e.g.,* SAC ¶¶ 1, 22, 38, 58-59, 73-74, 102, 171-73, 181 and §§ C, D.3. (These and all allegations referenced in this submission can only be properly understood collectively and in context, and Plaintiffs will seek to strike any new selective and inaccurate citations by Defendants that obfuscate actual pleadings).

**SCHWARCZ, RIMBERG,**
**BOYD & RADER, LLP**
6310 San Vicente Blvd
Los Angeles, CA 90048

2
SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 5:11-cv-02449-EJD-PSGx
Exhibit A

1  the sovereign. *See Bowoto v. Chevron Corp.*, 2007 WL 2349345 at *4 (N.D. Cal. Aug. 14, 2007).
2  In other words, Defendants must establish that the acts were taken in response to orders from a
3  valid chain of command. *Id.*  As the Ninth Circuit explained in its rejection of the act of state
4  defense in the *Marcos* cases, "it is only when officials having sovereign authority act in an *official*
5  *capacity* that the Act of State Doctrine applies." *In re Estate of Ferdinand Marcos*, 25 F.3d 1467,
6  1471 (9th Cir. 1994) (emphasis added).  Because the SAC alleges that the alleged abuses, the
7  Defendants aided, abetted and in other ways furthered, were carried out *ultra vires* by officers
8  acting outside of and beyond the mantle of legitimate authority (*see* Opp. Br. at 40-41), even
9  though Defendants "under color of law, contributed to the continuous and widespread violation of
10 human rights of plaintiffs," their acts were not official acts of state. *See Bowoto*, 2007 WL
11 2349345 at *4 (discussing *Marcos* and other cases).

12 **III.   Defendants' Reply For The First Time Purports To Contest Agency Liability**

13        Defendants for the first time in their Reply attempt to contest agency and ratification
14 liability theories alleged in the SAC.  Reply at 10; *see* SAC ¶¶ 136-49.

15        Defendants did not mention agency or ratification theories in their original Motion. Since
16 Defendants did address direct liability at the end of a footnote in their original Motion (Mot. at 25
17 n.15 (stating only that there is no "factual allegation demonstrating [Defendants'] personal
18 participation or willful direction" in the physical acts of harm alleged) (citation omitted)), they are
19 now mischaracterizing agency and ratification as "species of direct liability."  Reply at 10.
20 Defendants' efforts to tie their new argument back to their original Motion fails, particularly
21 because the distinction between direct liability and agency liability and ratification is well known
22 in this Circuit.  *See, e.g., Bates v. Bankers Life and Cas. Co.,* --- F.Supp.2d ----, 2014 WL 292508
23 at *28 (D.Or. 2014) ("In the alternative to direct liability, plaintiffs allege CNOFG's indirect
24 liability . . . on either an alter ego or an agency theory."); *In re Fresh and Process Potatoes*
25 *Antitrust Litigation,* 834 F.Supp.2d 1141, 1167 (D. Idaho 2011) ("Given the deficiency of the
26 direct-liability allegations, plaintiffs are left with their agency allegations."); *Paramount Farms,*
27 *Inc. v. Ventilex B.V.,* 735 F.Supp.2d 1189, 1209 (E.D. Cal. 2010) (finding unclear the scope of
28 defendant's "direct liability let alone its liability under agency or ratification theories.").

SCHWARCZ, RIMBERG,
BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

3

SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 5:11-cv-02449-EJD-PSGx
Exhibit A

1    Defendants also suggest for the first time that there is no agency liability because the
2    Chinese government cannot be an agent of Cisco. Reply at 10. This argument is confusing on
3    many levels, not the least of which being that Plaintiffs have never referred to the Chinese
4    government as Defendants' agents. Rather, agency liability pled in the SAC refers to the role of
5    Cisco China and other such agents of the Defendants. *See* SAC ¶¶ 136-49. Defendants seem to
6    ignore an entire section of the SAC by putting forth a new "straw man" agency argument never
7    suggested by the allegations. *Id.* § D.2 ("Alter Egos and Agents").

### IV.   Defendants' Reply Mischaracterizes Allegations In The SAC And Obfuscates Dispositive Issues

Defendants continuously demand a double standard: they ask the Court to accept their numerous unsupported factual assertions and to ignore the Second Amended Complaint's ("SAC") well-supported contrary factual allegations. For example, rather than accepting the SAC's allegations as true, Defendants base their legal arguments on the new factual contention that Cisco did not transact with any organization whose sole and exclusive purpose was the commission of the alleged crimes, notwithstanding allegations to the contrary. *See* Reply at 8. This factual contention was not raised in their Motion. Further, it is unsupported by the record: the SAC alleges Defendants assisted and collaborated with such entities as Office 610, i.e., the extra-legal entity designated with the sole and exclusive task of purging China of Falun Gong through the operation of a penumbra of torture sites created solely for this purpose. *See, e.g.*, SAC ¶¶ 3, 41-42, 86, 102, 108, 112, 115, 127, 154, 179, 181, 186, 195 (assisted and collaborated with 610 agents).

In addition, Defendants newly conflate the specifically anti-Falun Gong parts of the Golden Shield such as the Internet Surveillance System with the entire Golden Shield apparatus, and especially that subset of generic features used for the most routine law enforcement tasks. *See* Reply at 4, 7. Defendants attempt to argue that because the whole Golden Shield apparatus does not have the nefarious qualities of some of its parts (e.g. the Internet Surveillance System), those parts themselves cannot have these qualities. *Id.* Defendants' new contention is no different than characterizations of North Korea's "Gulag" for political dissidents as performing solely routine

4

SCHWARCZ, RIMBERG, BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 5:11-cv-02449-EJD-PSGx
Exhibit A

law enforcement functions because another branch of North Korean security may be engaged in issuing traffic tickets.

Again, the contention is not supported by the record. Contrary to Defendants' obfuscation, the SAC alleges that the Golden Shield operates as a well-integrated apparatus that facilitates the torture and persecution of Falun Gong, especially through the Internet Surveillance System. *See, e.g.*, SAC ¶¶ 4-6, 80, 81, 83, 98-101. In fact, Cisco's own slides define the purpose of the Golden Shield Internet Surveillance System as the *douzheng*, i.e., torture and suppression of Falun Gong. *See, e.g., id.* ¶¶ 61-62, 65, 83. Cisco's custom designs depict the Internet Surveillance System as part of a larger anti-Falun Gong system comprising thought control platforms (making it possible for Chinese security to instantly access and automatically compile data relevant to the end goal of coercing individual Falun Gong to abandon their religious beliefs and help security find and persecute others based on individual susceptibility to various forced conversion measures). *See, e.g., id.* ¶¶ 83-86. Cisco's custom designs additionally integrate the Surveillance System with torture sites (including even a specialized torture facility run by the 610 Office) and the lifetime management system to ensure that targeted Falun Gong would be subjected not merely to sporadic instances of torture but to continuous recurrence of such abuse due to the omnipresence of Cisco's Golden Shield in China. *Id.*; *see also id.* ¶¶ 78-79, 97-101.[4] These systems, specifically designed and directed at Falun Gong, directly led to Plaintiffs' injuries, and it is irrelevant that other parts of the Golden Shield may be used for more benign purposes.

## V. Defendants' Reply Attempts To Characterize The Declaration Attached To Their Motion To Dismiss As "Unrebutted Fact"

The SAC alleges that the persecutory acts facilitated directly by Defendants' Golden Shield occurred as part of a *political extra-legal campaign. See, e.g., id.* ¶¶ 37-46. Defendants'

---

[4] Plaintiffs do not "concede" that forced labor while in prison is not actionable in light of serious due process violations. Reply at 13. To the contrary, Plaintiffs limited the forced labor claim (in addition to the arbitrary arrest and detention claim) to those deprived of all due process protections (including even the appearance of due process hearings etc.) to avoid unnecessarily complicated litigation and avoid distraction from the vindication of other claims involved in this matter.

5

SCHWARCZ, RIMBERG,
BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 5:11-cv-02449-EJD-PSGx
Exhibit A

pleadings deliberately ignore the *political* nature of the *extra-legal* campaign they furthered, i.e., a calculated attack comprising torture, disappearance and other abuses carried out *ultra vires* by Chinese security. To this end, Defendants' Motion attached a purported expert declaration under Fed. R. Civ. P. 44.1, that fails to contest much less address SAC characterizations of the campaign as *political* or the abuses as *ultra vires* (as indicated *supra* at p. 3).

Now, for the very first time in their Reply, they contend that the unqualified lawyer's opinions should be considered "unrebutted facts". Reply at 4 n.3. First, such a transformation of law to "unrebutted" fact under Rule 44.1 would be improper. "[F]oreign law experts may not opine as to the ultimate application of foreign law to the facts of the case." *Krish v. Balasubramanian*, No. 106-CV-01030, 2006 WL 2884794, at *3 (E.D. Cal. Oct. 10, 2006).

Second, the declaration itself is irrelevant. In their Opposition, Plaintiffs submitted a proffer by Dr. Chu-cheng Ming (professor and former chairman of the Political Science Department of National Taiwan University and an acclaimed expert in People's Republic of China politics and foreign policy) to help the Court accurately assess the irrelevance of the opinions presented by Mr. John Chu in his declaration by averring that the "political" campaigns (*douzheng*) carried out against dissident entities (e.g., even Catholic and Protestant denominations) are by no means a form of law enforcement or legitimate state activity. *See* Opp. Br. at n. 3. Plaintiffs' expert would testify, *inter alia*, that the torture and persecution suffered by Plaintiffs in this matter have nothing to do with routine enforcement, but are instead extra-legal acts of political suppression carried out by security forces acting *ultra vires* including those established solely to persecute Falun Gong. While Plaintiffs do not concede that the religion of Falun Gong was subject to a legal ban in China or that members of the religion are subjected to specified penalties based on their religious belief and practice, even if that were the case, that would not turn the *ultra vires* abuses alleged in the SAC into legitimate law enforcement in China. See, for instance, *Doe v. Qi*, where this Court explicitly found that

> "the lawfulness of Falun Gong is not an issue that needs to be addressed by the Court . . . since the sole question posed by the complaints is whether Defendant officials carried out acts of torture [] and other gross human rights violations against the Plaintiffs . . . . If they did, the reason they committed the atrocities is irrelevant. . . . [Thus] if the Defendants herein committed or are legally responsible

6

SCHWARCZ, RIMBERG,
BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 5:11-cv-02449-EJD-PSGx
Exhibit A

for the commission of the acts complained of, such as torture, while the Plaintiffs were detained, *any asserted justification for their arrest is legally irrelevant.*"

*Doe v. Qi*, 349 F. Supp. 2d 1258, 1307 (N.D. Cal. 2004) (emphasis added). In addition, the PRC itself has "categorically denied" the "alleged violations of human rights," while stating that any such violations would be *ultra vires* and outside of routine law enforcement. *Id.* at 1306.[5]

However, Plaintiffs submit that it is inappropriate for materials outside of the pleadings to be considered at this stage of motion to dismiss, prior to full discovery of facts and expert reports. Defendants' attempted assertions of non-SAC facts are not relevant to the legal issues currently before the Court.[6] "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Williams v. County of Alameda*, 2014 U.S. Dist. LEXIS 17589, 8-9 (N.D. Cal. Feb. 10, 2014) (quoting, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted)). Therefore, the "unrebutted facts" submitted by Defendants are more appropriately considered after the parties have had an adequate opportunity to fully develop the factual record. *See Williams*, 2014 U.S. Dist. LEXIS 17598 at 8-9. *See also Silberman v. Innovation Luggage, Inc.*, D.C.N.Y. 2002, 2002 WL 31175226, *1-2 (Rule 44.1 does not preempt Rule 26).

If the Court intends to consider the Defendants' "expert declaration" at this stage, Plaintiffs hereby request leave to file a rebuttal expert declaration from Dr. Chu-cheng Ming.[7]

## VI. Defendants' Reply Invokes A New Political Question Argument By Newly Challenging The Nature Of The SAC's Tort Claims

In a blatant effort to create a political question where none exists, Defendants' Reply for

---

[5] The SAC limits arbitrary arrest and detention and forced labor claims to those Plaintiffs who were sent to Re-education through Labor camps without a formal arrest, a hearing of any kind or access to even the appearance of due process protections. Moreover, as noted in Plaintiffs' Opposition, the Re-education through Labor System has been dismantled in China precisely for these reasons. *See* Opp. Br. at 43.

[6] Rather than address the *political* nature of the calculated attack Defendants allegedly assisted and furthered, Defendants instead rely on the John Chu declaration to create a specious argument never alleged anywhere in the four corners of the SAC, i.e., that the deliberate program comprising extra-legal offenses are not the basis of Plaintiffs' claims.

[7] Since Plaintiffs consider this to be a matter requiring an expert in the area of Chinese political history qualified to address the nature and history of analogous *douzheng* campaigns in China, the declaration Plaintiffs would file would not qualify as a declaration on foreign law, but rather as an expert declaration on the irrelevance of foreign law on this particular issue.

SCHWARCZ, RIMBERG, BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

7

SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 5:11-cv-02449-EJD-PSGx
Exhibit A

the first time asserts that SAC's focus on the *tort* nature of the claims is incorrect because the claims are "predominantly international law claims associated with the human rights issues that this nation's political branches have addressed." Reply at 22.

Defendants' new contention is in itself confusing and self-defeating, because: (1) it entirely ignores the fact that the SAC alleges <u>both</u> tort claims in violation of state law, and "<u>torts</u> in violation of the law of nations" pursuant to 28 U.S.C. § 1350 (emphasis added); and (2) Defendants cannot point to any federal regulation immunizing exporters of technology from state tort law or from international law claims. *See* Opp. Br. at 44. In fact, as articulated in Plaintiffs' Opposition, U.S. policy expressed by both political branches favors the adjudication of claims against Cisco for *torts* in violation of international law involving its exports. *See id.* at 48 (referencing statements on the issue made by Senate Judiciary subcommittee members, the Department of State, and the former Secretary of State, Hillary Rodham Clinton).

In further support of Plaintiffs' position that this case is consistent with U.S. foreign policy, since the filing of Plaintiffs' Opposition, on a recent trip to China, Secretary of State John Kerry reiterated the United States government's opposition to China's repressive security apparatus. *See, e.g.*, Michael R. Gordon, *Chinese Ask Kerry to Help Tear Down a Firewall*, NEW YORK TIMES, February 16, 2014 at A8. Defendants' attempts to circumvent this Executive Branch condemnation by referring to their actions as "sales of crime control equipment" (Reply at 22) once again ignores SAC allegations that, for example, emphasize Defendants' recommendation of first-of-a-kind repressive features, customized designs, and collaborative implementation of all features essential to effectuate the *douzheng* campaign, including tools designed specifically to directly enable the torture and ideological conversion of Falun Gong. *See e.g.*, SAC ¶¶ 76-79, 81, 83-87, 96, 98 (h-k), 99-101, 38.

Accordingly, Defendants' mischaracterization of the SAC's claims fails to support that a political question issue arises in this action for state and international law tort violations where U.S. policy continually supports examination into and adjudication of such tort claims.

**VII. Conclusion**

For the foregoing reasons, Plaintiffs respectfully requests that the Court deny Defendants'

8

SCHWARCZ, RIMBERG, BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 5:11-cv-02449-EJD-PSGx
Exhibit A

1  Motion to Dismiss in its entirety. In the event that the Court decides to consider the Declaration

2  of John (Hejun) Chu, Plaintiffs respectfully request leave to file a rebuttal expert declaration from

3  Dr. Chu-cheng Ming.

4
5  Dated:  February 21, 2014                Respectfully Submitted,

6                                           SCHWARCZ, RIMBERG, BOYD & RADER, LLP

7                                           By:      /s/ Kathryn Lee Boyd[8]
                                                      Kathryn Lee Boyd
8
9                                           HUMAN RIGHTS LAW FOUNDATION

                                            By:      /s/ Terri E. Marsh
10                                                    Terri E. Marsh, Esq. (*pro hac vice*)

11                                          Attorneys for Plaintiffs DOE I, DOE II, Ivy HE,
                                            DOE III, DOE IV, DOE V, DOE VI, ROE VII,
12                                          Charles LEE, ROE VIII, DOE IX, LIU Guifu,
                                            WANG Weiyu, and those individuals similarly
13                                          situated

---

[8] I have obtained the consent of the other signatory to electronically sign this Motion on her behalf.

9

SCHWARCZ, RIMBERG, BOYD & RADER, LLP
6310 San Vicente Blvd
Los Angeles, CA 90048