# EXHIBIT A



1 of 1 DOCUMENT

KRISHANTI, et al., Plaintiffs, v. RAJARATNAM, et al., Defendants.

Civil Action No. 2:09-cv-05395 (JLL) (JAD)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2014 U.S. Dist. LEXIS 58314

April 28, 2014, Decided
April 28, 2014, Filed

**NOTICE:** NOT FOR PUBLICATION

**COUNSEL:** [*1] For Karunamunige Chamila Krishanthi, Individually, on behalf of the minor children, and on behalf of the Estate of HETTIGE PRIYANTHA PERERA JAYATUNGA, Deceased, Punyaseeli Dhammika Rajapakse, Individually and on behalf of the Estate of AADAMBARAGE LUXMAN DE ALWIS, Deceased, Sadhisa Jayasinghe Gunasekara, Individually, on behalf of the minor child, and on behalf of the Estate of MALINDA ARUMADURA, Deceased, Weerasinghege Murin Silva, Individually and on behalf of the Estate of NETTI KUMARAGE DON DILAN CHANDIKA, Deceased, Hettiyakandage Anusha Kumari Fernando, Individually, and on behalf of the Estate of HETTIYAKANDAGE SURANGA KUMARA FERNANDO, Deceased, Gangodawillge Kusumawathi Dabare, Individually and on Behalf of the Estate of UNDAMANDADIGE LEELAWATHI FERNANDO, Deceased, Godihena Gamage Niluka S Gamage, Individually and on behalf of the Estate of GODIHENA GAMAGE NADIKA, Deceased, Don Sarath Chandras Hallala, Individually and on behalf of the Estate of DON SUPUN HALLALA, Deceased, Senehiweera Arachchige Munidesa, Individually and on behalf of the Estate of ANJANA THANUSKA HABARADUWA HEWAGE, Deceased, Buda Godage Vonica Keerthilatha, Karunamunige, Hathwellage Dona Sriyani, Individually [*2] and on behalf of the Estate of SHANIKA OSHADI PEILLASSAGE, Deceased, Diyawadanage Subashini Sagar Priyadarshani, Individually, on behalf of the minor child, and on behalf of the Estate of KURUPPU APPUHAMYLAGE KARUNARATNA, Deceased, Kankanamage Wijeratna, Individually and on behalf of the Estate of KANKANAMAGE NILANGA NUWAN KUMARA, Deceased, Theymuni Dewage Dayawathi, Individually and on behalf of the Estate of POLWATTA DURAGE NANDANA KUMARA, Deceased, Done Pathminie Mahamudalige, Individually and on behalf of the Estate of KOLITHA KUMARA MAHAMUDALIGE, Deceased, Kasturi Arachchige Done Gunawathi, Individually and on behalf of DOMBAGAHAGE GINESHA CHAMALI PERARA, Deceased, Juwandara Kankanamge Nira Perera, Individually and on behalf of the Estate of MAAGALAGE RUSHMI LUXIKA PERERA, Deceased, Naranpitage Rohana Pathmasa Perera, Balapuwaduge Thusani Manahar Mendis, Individually, on behalf of the minor child, and on behalf of the Estate of KANKANAM VITHARANAGE PIYARATNA, Deceased, Udahage Don Asanka Chan Kumara, Individually and on behalf of the Estate of UDAHAGE DONE MAHINSA PRADEEPANI, Deceased, Wijayan Rajaratnam, Individually and on behalf of the Estate of RAJARATNAM RADEESWARAN, Deceased, [*3] Rajapakse Manikkuthambi Y Rani, Malalgodapitiya Gamage Lahiru Madhusanka, Individually and on behalf of the Estate of MALALGODAPITIYA GAMAGE VICHITRA SRIMALI, Deceased, Captain Pathmasiri Thewarapperuma, Individually and on behalf of the Estate of VIMUKTHI SAJAN THEWARAPPERUMA, Deceased, Palliyagoda Kalukankanamage Peiris, Individually and on behalf of the Estate of PONSUGE THIWANKA TISSERA, Deceased, Liyana Arachchige Asok Upali, Witharanage Chularatne, Individually and on behalf of the Estate of WITHARANAGE DEVIKA HEMALI WITHARANA, Deceased, Mestiyage Ranjanee Fernando, Individually, on behalf of the minor child, and on behalf of the Estate of SAMARAKOON MUDIYANSELAGE SAMARKOON BANDA, Deceased, Plaintiffs: ALLYN ZISSEL LITE, BRUCE DANIEL

Case 5:11-cv-02449-EJD Document 148-1 Filed 04/29/14 Page 3 of 12

Page 2
2014 U.S. Dist. LEXIS 58314, *

GREENBERG, JEFFREY ALAN SHOOMAN, JOSEPH J. DEPALMA, LEAD ATTORNEYS, LITE, DEPALMA, GREENBERG, LLC, Newark , NJ.

For Rajakumara Rajaratnam, Defendant: JOHN J. GIBBONS, THOMAS R. VALEN, LEAD ATTORNEYS, WILLIAM P. DENI , JR., GIBBONS, P.C., Newark , NJ.

For Jesuthasan M. Rajaratnam, Defendant: JOHN J. GIBBONS, THOMAS R. VALEN, LEAD ATTORNEYS, WILLIAM P. DENI , JR., GIBBONS, P.C., Newark , NJ.

For Tamil Rehabilitation Organization, also known as TRO, TAMIL [*4] RELIEF ORGANIZATION, Defendant: ALAN SILBER, LIN CLAIRE SOLOMON, LEAD ATTORNEYS, KATE ELIZABETH JANUKOWICZ, WALDER, HAYDEN & BROGAN, PA, Roseland , NJ; STUART A. WHITE, LEAD ATTORNEY, Office of the Public Defender, State of New Jersey, Somerville , NJ.

**JUDGES:** Hon. Jose L. Linares, United States District Judge.

**OPINION BY:** Jose L. Linares

**OPINION**

JOSE L. LINARES, U.S.D.J.:

This matter comes before the Court upon the Supplemental Briefs of Plaintiffs Karunamunige Chamila Krishanta, et al. ("Plaintiffs"), Rajakumara Rajaratnam and Jesuthasan Rajaratnam (the "Rajaratnam Defendants"), and Tamil Rehabilitation Organization ("TRO"), arguing the following issues: i) personal jurisdiction over TRO; ii) subject matter jurisdiction over Plaintiffs' aiding and abetting crimes against humanity claim; iii) forum non conveniens; and iv) failure to exhaust. Pursuant to *FED. R. CIV. P 78*, no oral argument was heard. Based on the following and for the reasons expressed herein, this Court finds that i) personal jurisdiction does not exist over TRO; ii) this Court has subject matter jurisdiction over Plaintiffs' aiding and abetting crimes against humanity claim; and iii) the Complaint need not be dismissed against the Rajaratnam Defendants [*5] for forum non conveniens or failure to exhaust.

**I. BACKGROUND** [1]

[1] The facts from this section are taken from the parties' pleadings.

**A. Factual Background**

**i) The LTTE**

The Liberation Tigers of Tamil Elam (the "LTTE") was founded in Sri Lanka in 1976. On October 8, 1997, the United States designated the LTTE as a Foreign Terrorist Organization ("FTO") under *Section 219 of the Immigration and Nationality Act*. On November 2, 2001, the United States designated the LTTE as a Specially Designated Global Terrorist ("SDGT") under Executive Order 13224. Both the FTO and SDGT designations prohibit individuals from providing financial and other material support to the LTTE.

The LTTE's goal is to establish a mono-ethnic Tamil State in northern Sri Lanka. According to the Federal Bureau of Investigation, the LTTE has murdered over 4,000 people since 2006. The LTTE is particularly known for its use of suicide bombings. The Plaintiffs in this case are victims of bombing attacks perpetrated by the LTTE in Sri Lanka in November 2007, February 2008, and April 2008.

**ii) TRO**

TRO is a Sri Lankan based non-governmental organization that generates funds for the LTTE. TRO's main United States branch is located in Cumberland, [*6] Maryland ("TRO-USA"). Plaintiffs state that TRO also maintains an office in Princeton Junction, New Jersey. On November 15, 2007, the United States Treasury Department ("USTD") designated TRO as a "charitable organization that acts as a front to facilitate fundraising and procurement for the LTTE." This designation prohibits United States individuals from engaging in activities with TRO. The USTD further specified that TRO-USA is the largest contributor to TRO's Sri Lankan branch. Additionally, the USTD expressly stated that TRO is "the preferred conduit of funds from the United States to the LTTE in Sri Lanka," and that TRO facilitated the "purchase of munitions, communication devices, and other technology for the LTTE" in the United States. Further, the United States Department of State indicated that "as late as 2007, [TRO-USA] was responsible for the largest percentage of overseas donations to the LTTE of any TRO office."

Plaintiffs state that TRO funds have been used to pay the salaries of LTTE members and to pay pension benefits to the families of LTTE members who have been killed. Plaintiffs also claim that TRO knowingly gave money to the LTTE for the purpose of assisting the [*7] LTTE in carrying out the terrorist attacks that killed or injured Plaintiffs and their families.

**iii) The Rajaratnam Defendants**

**a. Corporate Support to the LTTE**

Case 5:11-cv-02449-EJD   Document 148-1   Filed 04/29/14   Page 4 of 12

Page 3
2014 U.S. Dist. LEXIS 58314, *

Rajakumara Rajaratnam holds dual citizenship in the United States and Sri Lanka. His father, Jesuthasan Rajaratnam, is a United States Citizen. In 2000, the Rajaratnam Defendants founded the Rajaratnam Family Foundation, Inc. ("RFF"), a charitable organization. Plaintiffs assert that the Rajaratnam Defendants made a number of contributions to RFF between 2001 and 2005, and that RFF then donated the funds to a number of Tamil charitable organizations, including TRO-USA and the TRO in Sri Lanka. According to Plaintiffs, the Rajaratnam Defendants made these donations with the knowledge that the money would be transmitted to the LTTE for the commission of terrorist acts. Plaintiffs also allege that Rajakumara Rajaratnam personally gave $1,000,000.00 to TRO-USA in June 2004, and that this contribution was funneled to the TRO in Sri Lanka.

Rajakumara Rajaratnam also founded Tsunami Relief, Inc. ("Tsunami Relief") after the Sri Lankan coast was struck with a tsunami in December 2004. Plaintiffs state that in 2005, Tsunami Relief took [*8] in $7,085,115.00 in direct public contributions, and donated $2,000,000.00 to the TRO in Sri Lanka. In July 2005, U.S. Embassy officials in Sri Lanka announced that the United States would not support regional relief efforts that would give LTTE control or management of relief funds. In 2006, Tsunami Relief took in $152,853.00 in direct public contributions. In 2006, Tsunami Relief also donated $500,000.00 to the TRO in Sri Lanka, and $1,000,000.00 to TRO-USA. Plaintiffs state that Rajakumara Rajaratnam directed Tsunami Relief to donate that money with the knowledge that it would be funneled by TRO to the LTTE in order to help the LTTE carry out its bombings.

**b. Personal Support to the LTTE**

Plaintiffs state that LTTE operatives have identified Jesuthasan Rajaratnam as a source for money used to bribe United States officials in connection with LTTE's attempts to remove itself from the United States' list of FTOs. Plaintiffs also state that Jesuthasan Rajaratnam has attended a number of fundraisers sponsored by LTTE charitable trust groups, and that he has hosted LTTE supporters and various fundraiser speakers at his home in New Jersey,

In November 2002, Rajakumara Rajaratnam was a guest [*9] speaker at a fundraising event held by the Ilankai Tamil Sangam Association in North Brunswick, New Jersey. Plaintiffs state that an LTTE flag and informational brochures concerning the LTTE were placed on a table in the conference hall. In his speech, Rajakumara Rajaratnam referred to the struggle in Sri Lanka and asked those in attendance to support the struggle. Donations were collected at this fundraiser by TRO.

**c. Contact between Rajakumara Rajaratnam and LTTE Leaders**

In 2006 and 2007, United States authorities arrested LTTE operatives for materially supporting the LTTE. One of these operatives was Karunakaran Kandasamy. In 2009, Kandasamy pleaded guilty to all charges of materially supporting the LTTE that were filed against him.

Plaintiffs state that one of Kandasamy's responsibilities was arranging meetings in LTTE controlled areas in Sri Lanka between LTTE leaders and LTTE supporters from the United States. Plaintiffs claim that between December 2002 and June 2003 Kandasamy tried to arrange meetings between Rajakumara Rajaratnam and his family and LTTE leader Vellupillai Prabhakaran. In letters written to Sri Lankan LTTE leaders, Kandasamy stated that Rajakumara Rajaratnam was [*10] "among the people who provide financial support for our struggle for freedom" and is someone who "has been working actively on the forefront." Kandasamy also wrote that Rajakumara Rajaratnam's "long lasting desire to meet and discuss with [Prabhakaran] is the prime reason for approaching you."

Additionally, in August 2009, LTTE leader Selvarasa Pathmanathan was captured and extradited to Sri Lanka. Plaintiffs state that Pathmanathan recently admitted that Rajakumara Rajaratnum knowingly provided financial support to the LTTE. Further, Plaintiffs claim that LTTE operative Vijayshanthar Patpanathan has confirmed to law enforcement officials that Rajakumara Rajaratnam donated $1,000,000.00 to the LTTE after a successful terrorist attack made by the LTTE in 2000.

**B. Procedural Background**

Plaintiffs filed a Complaint against the Rajaratnam Defendants and TRO on October 22, 2009, alleging i) aiding and abetting crimes against humanity, ii) aiding and abetting acts of terrorism, iii) reckless disregard, iv) negligence, v) wrongful death, vi) survival action, and vii) negligent/intentional inflection of emotional distress (ECF No. 1). The Rajaratnam Defendants filed a Motion to Dismiss on December [*11] 16, 2009, arguing that the Complaint should be dismissed for lack of subject matter jurisdiction, failure to exhaust, forum non conveniens, and failure to state a claim (ECF No. 23). TRO filed a Motion to Dismiss on March 12, 2010, arguing that the Complaint should be dismissed for lack of personal jurisdiction, lack of subject matter jurisdiction, failure to state a claim, failure to exhaust, and forum non conveniens (ECF No. 35). On August 26, 2010, the Honorable Dennis M. Cavanaugh, United States District Judge dismissed Plaintiffs' aiding and abetting acts of terrorism, reckless disregard, negligence, wrongful death, and survival action claims (ECF No. 48). Judge Cavanaugh also dismissed

Case 5:11-cv-02449-EJD   Document 148-1   Filed 04/29/14   Page 5 of 12

Page 4
2014 U.S. Dist. LEXIS 58314, *

count seven in part, finding that Plaintiffs stated a claim for intentional infliction of emotional distress, but not for negligent inflection of emotional distress. Judge Cavanaugh did not dismiss count one (aiding and abetting crimes against humanity), and he reserved judgment concerning the issues of i) personal jurisdiction over TRO, ii) failure to exhaust, and iii) forum non conveniens. Further, with respect to the issue of personal jurisdiction over TRO, Judge Cavanaugh ordered the parties [*12] to conduct jurisdictional discovery.

On September 9, 2010, the Rajaratnam Defendants filed a Motion for Reconsideration, and alternatively moved for certification of the Court's opinion for an interlocutory appeal (ECF No. 51). On November 23, 2010, TRO filed a Second Motion to Dismiss, arguing that the newly decided Second Circuit decision in *Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111 (2d Cir. 2010)*, demonstrated that the Court must dismiss count one against TRO for lack of subject matter jurisdiction under the Alien Tort Statute ("ATS") (ECF No. 60). On May 18, 2011, Judge Cavanaugh denied the Rajaratnam Defendants' Motion for Reconsideration and request for certification of an interlocutory appeal (ECF No. 92). On June 30, 2011, Judge Cavanaugh denied TRO's Second Motion to Dismiss for lack of subject matter jurisdiction, stating that "[t]he Kiobel decision is not binding on this Court, and at most it represents a circuit split on the issue of corporate liability under the ATS" (ECF No. 94 at 2). On July 11, 2011, TRO filed a Motion for Certificate of Appealability of the Court's June 30, 2011 Opinion (ECF No. 96). On February 14, 2012, Judge Cavanaugh held in abeyance the [*13] Motion for Certificate of Appealability, ordering TRO to move for relief or renew its Certificate after the Supreme Court rendered a decision in Kiobel, as the Supreme Court had recently granted a petition for a writ of certiorari for this case (ECF No. 110).

After the Supreme Court's decision in Kiobel was rendered, the Rajaratnam Defendants and Plaintiffs submitted several letters to the Court, making arguments regarding Kiobel's impact on this case (See ECF Nos. 134-37). On May 2, 2013, Judge Cavanaugh ordered TRO to resubmit its Certificate of Appealability or other relief requested, and ordered that the parties were to submit supplemental briefs (ECF No. 138). In a May 13, 2013 Letter Order, Judge Cavanaugh clarified that each of the parties were to submit a brief by June 10, 2013, addressing the remaining issues in this case, including the issues the Court reserved ruling on in its August 26, 2010 Opinion (ECF No. 140). Judge Cavanaugh also allowed each party to file a Letter Reply to the briefs.

Plaintiffs submitted their supplemental brief on June 10, 2013, arguing that i) Kiobel does not change the Court's ruling that it has subjection matter jurisdiction over Plaintiffs' ATS [*14] claim, ii) Defendants' arguments regarding forum non conveniens and exhaustion of remedies must fail, and iii) personal jurisdiction exists over TRO in New Jersey (ECF No. 141). The Rajaratnam Defendants and TRO also submitted supplemental briefs on June 10, 2013 (ECF No. 142-43). Plaintiffs submitted a Letter Reply on June 25, 2013 (ECF No. 145). The Rajaratnam Defendants and TRO also submitted Letter Replies on June 25, 2013 (ECF Nos. 147-48).

On August 20, 2013, Plaintiffs submitted a Letter asking the Court to consider the August 14, 2013 decision of the District of Massachusetts in *Sexual Minorities Uganda v. Lively, 960 F.Supp.2d 304 (D. Mass. 2013)* (ECF No. 149). The Rajaratnam Defendants submitted a Letter on August 27, 2013, disputing Plaintiffs' August 20, 2013 Letter, and asking the Court to consider the August 21, 2013 decision of the Second Circuit Court of Appeals in *Balintulo v. Daimer, 727 F.3d 174 (2d Cir. 2013)* (ECF No. 150). Plaintiffs submitted a Letter on August 30, 2013, disputing the arguments raised in the Rajaratnam Defendants' August 27, 2013 Letter (ECF No. 151).

On November 19, 2013, Plaintiffs submitted a Letter asking the Court to consider the November 4, [*15] 2013 decision of the Third Circuit Court of Appeals in *Ben-Haim v. Newman, 543 F. App'x 152 (3d Cir. 2012)* (ECF No. 153). The Rajaratnam Defendants submitted a Letter on November 27, 2013, disputing Plaintiffs' November 19, 2013 Letter (ECF No. 155).

On April 10, 2014, this case was reassigned to the Honorable Jose L. Linares, United States District Judge and the Honorable Joseph A. Dickson, United States Magistrate Judge (ECF No. 157).

## II. DISCUSSION

### A. Personal Jurisdiction Over TRO

#### i) Jurisdiction Based on Physical Presence

Plaintiffs first argue that personal jurisdiction was obtained over TRO through service of process upon Ramanathan Ranjan ("Ranjan"), a director of TRO, in New Jersey. To support this proposition, Plaintiffs rely on *Burnham v. Superior Court of California, 495 U.S. 604, 619 (1990)*, where the Supreme Court found that "jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'" However, Plaintiffs' reliance on Burnham is misplaced, as the holding in Burnham only applies to individuals, not corporations.. [*16] See *Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 182 (5th Cir. 1992)* ("Burnham did not involve a corporation and did not

decide any jurisdictional issue pertaining to corporations."); *Citibank, N.A. v. Estate of Simpson, 676 A.2d 172, 177 (N.J. Super. Ct. App. Div. 1996)* (stating that "a foreign corporation or unincorporated association would not be subject to this State's *in personam* jurisdiction merely because a person authorized to receive service on its behalf happened to be present in this State and was personally served here"); Hunt v. Global Incentive & Meeting Mgmt., No. 09-4921, 2010 WL 3740808, at *8 n.7 (D.N.J. Sept. 20, 2010) ("The Court notes that Plaintiffs personally served [Defendant] in both his individual capacity and as a corporate officer of GIM in Arlington, Texas. While this method of service would have been sufficient to extend personal jurisdiction in Texas over [Defendant] himself, it would most likely not be sufficient to extend personal jurisdiction over Defendant GIM." (internal citation omitted)). As such, this Court will address whether general or specific jurisdiction exists over TRO, and will consider the deposition of Ranjan provided by [*17] Plaintiffs at the conclusion of the jurisdictional discovery period.

**ii) General Jurisdiction**

Plaintiffs argue that this Court has general jurisdiction over TRO because i) Ranjan's New Jersey's office operated as a *de facto* headquarters for TRO's business activities within New Jersey, ii) the address, phone number, and fax number of the New Jersey office were regularly used to promote TRO's activities within New Jersey, iii) TRO raised a substantial amount of money within New Jersey between 1997 and 2005; iv) Ranjan organized a number of TRO events and fundraiser in New Jersey at least once a year between 1999 and 2005, each time renting a venue in New Jersey, taking out insurance in New Jersey, marketing in New Jersey, and recruiting volunteers in New Jersey; and v) TRO's English-language website is operated from New Jersey.

The parties first argue over the time period that this Court should analyze to determine whether there is general jurisdiction over TRO. TRO argues that Plaintiffs cannot establish general jurisdiction because all of the relevant activities that took place in New Jersey occurred years before the Complaint was filed in 2009. The Court rejects this argument. To determine [*18] general jurisdiction, a court must "examine [the defendant's] contacts over a 'reasonable period' of time." Leja v. Schmidt Mfg., Inc., No. 01-5042, 2005 WL 1366533, at *4 (D.N.J. June 7, 2005). There is no bright-line rule as to how many years constitutes a reasonable period of time, as various courts have found that three years, five years, and seven years were all reasonable. See *Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996)* (citing cases). Further, in Metro, the Second Circuit found that the district court erred in limiting its jurisdictional analysis to the year 1993 when it previously allowed for jurisdictional discovery for the years 1987-1993. Id. In the present case, on December 6, 2010, Magistrate Judge Dickson found that the applicable time period for the parties' jurisdictional discovery was October, 1, 2001, to the present (See ECF No. 71). As such, this Court will assess general jurisdiction within the time period provided by Judge Dickson.

However, even when considering TRO's contacts with New Jersey within the time frame favored by Plaintiffs, general jurisdiction over TRO is not warranted. General jurisdiction may be exercised over a [*19] defendant when it "has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 334 (3d Cir. 2009)* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984))*. In *Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)*, the Supreme Court clarified that the appropriate test is whether a corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." The Supreme Court recently reaffirmed the "at home" test as the proper inquiry. See *Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014)* (stating that "the inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State'"). In Daimler, the plaintiffs filed suit against a German corporation in California. Id. at 751. The corporation's subsidiary in the United States had several [*20] California based facilities and a regional office located in California. Id. at 752. However, the Supreme Court found that "[e]ven if we were to assume that . . . [the subsidiary's] contacts are imputable to [the German corporation], there would still be no basis to subject [the German corporation] to general jurisdiction in California." *Id. at 760*.

In the present case, TRO's New Jersey contacts are not so continuous and systematic that they render TRO "at home" in this state. The fact that Ranjan organized events and fundraisers once a year cannot meet this heightened standard. Further, while Plaintiffs focus on the fact that Ranjan maintained a *de facto* office in New Jersey, they do not point to any substantial activities that occurred as a result of this office other than the fundraising. It is clear from Daimler that the physical presence of a corporation in a state does not necessarily render the corporation "at home" in that state. Finally, Plaintiffs point to the maintenance of TRO's English-language website in New Jersey. While this is certainly a continuous activity, it falls short satisfying the "at home" test. See, e.g., Applied Food

Case 5:11-cv-02449-EJD Document 148-1 Filed 04/29/14 Page 7 of 12

Page 6
2014 U.S. Dist. LEXIS 58314, *

Sciences, Inc. v. New Star 21, Inc., No. [*21] W-07-CA-359, 2009 WL 9120113, at *3 (W.D. Tex. Jan. 23, 2009) (finding that the fact that "one of the websites operated by [the defendants] was allegedly hosted from a server in Texas" was not sufficient to confer general jurisdiction over the defendants). As the Supreme Court stated in Daimler, the exercise of general jurisdiction simply based on a corporation's "substantial, continuous, and systematic course of business" within a state is an "unacceptably grasping" formulation. *134 S. Ct. at 761*.

As such, this Court finds that there is no general jurisdiction over TRO in New Jersey.

### iii) Specific Jurisdiction

A court may exercise specific jurisdiction over a defendant when the defendant has "'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 334 (3d Cir. 2009)* (quoting *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985))*. Even a single contact can establish specific jurisdiction if the contact "creates a substantial connection with the forum." *Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)*. If a [*22] court finds that the defendant purposefully directed its activities at the forum and that the plaintiff's injuries arise out of the defendant's activities, it must then consider "whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'" *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009)* (quoting *Burger King, 471 U.S. at 476*)).

Here, TRO directed its activities towards New Jersey when it held numerous fundraisers in the state and solicited money from its residents. TRO argues that its fundraising activities in New Jersey were only a small piece of a national solicitation structure. However, based on the facts alleged by Plaintiffs, the solicitation activities within New Jersey were hardly an insignificant piece of that structure, and the fact that additional fundraising may have occurred in other states does not defeat Plaintiffs' claims.

While Plaintiffs have shown that TRO directed its activities towards New Jersey, they have not shown that the injuries in this case arose from TRO's New Jersey activities. The Third Circuit has stated that this inquiry begins with a "but-for" causation test, which [*23] is satisfied "when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 319 (3d Cir. 2007)*. See also Med. Transcription Billing Corp. v. Bronx-Lebanon Hosp. Ctr., No. 12-1028, 2012 WL 2369425, at *3 (D.N.J. June 20, 2012) ("In O'Connor, the United States Court of Appeals for the Third Circuit fully addressed [the relatedness requirement] for the first time. There, the court held that but-for causation was a necessary requirement for establishing relatedness between a defendant's purposeful contacts and each specific cause of action."); *Stinnett v. Atl. City Showboat, Inc., No. 07-4743, 2008 WL 1924125, at *6 n.3 (E.D. Pa. Apr. 28, 2008)* (stating that "district courts are advised to ensure the existence of 'some minimal link between contacts and claims' by beginning their analysis 'with but-for causation'"). Here, Plaintiffs have not set forth facts that establish that the LTTE's bombings would not have occurred but for TRO's New Jersey-specific activities. While Plaintiffs' allegations indicate that TRO raised money in New Jersey with the intent that the money would eventually reach the LTTE, [*24] Plaintiffs have not shown that any of the money raised by TRO in New Jersey was used to facilitate the relevant bombings. In response to this argument, Plaintiffs point to the following statement by the Third Circuit in O'Connor: "Our relatedness analysis . . . requires neither proximate causation nor substantive relevance. It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims." *496 F.3d at 324* (internal citation omitted). However, although Plaintiffs need not establish proximate causation, this does not fix their failure to establish but-for causation. As such, this Court cannot find that specific jurisdiction exists over TRO in New Jersey. Accordingly, the Complaint is dismissed against TRO without prejudice.

### B. Subject Matter Jurisdiction

### i) The Alien Tort Statute and Kiobel

The ATS provides a district court with original jurisdiction over a civil action brought (1) by an alien, (2) for a tort, (3) that was committed in violation of the law of nations or a treaty of the United States. *28 U.S.C. § 1350*. Federal courts may recognize claims under the ATS based "on the present-day law of nations" that "rest [*25] on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th century paradigms [the Supreme Court has] recognized." *Sosa v. Alvarez-Machain, 542 U.S. 692, 725 (2004)*. In *Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659 (2013)*, the Supreme Court addressed the question of whether the ATS covers tortious acts that occurred outside of the United States.

In Kiobel, the petitioners were Nigerian citizens residing in the United States who filed suit against Dutch, British, and Nigerian corporations under the ATS for "aid[ing] and abet[ing] the Nigerian Government in committing violations of the law of nations in Nigeria." *Id. at 1662*. The petitioners alleged, among other things,

Case 5:11-cv-02449-EJD   Document 148-1   Filed 04/29/14   Page 8 of 12

Page 7
2014 U.S. Dist. LEXIS 58314, *

that the defendants helped the Nigerian government perpetrate attacks on villages in Nigeria by "providing the Nigerian forces with food, transportation, and compensation, as well as by allowing the Nigerian military to use respondents' property as a staging ground for attack." *Id. at 1662-63*.

The Supreme Court began its discussion by addressing the presumption against extraterritorial application, which is a cannon of statutory interpretation [*26] that provides that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id. at 1664 (quoting Morrison v. National Australia Bank Ltd., 130 S.Ct. 2869, 2878 (2010))*. After examining the purposes of the presumption, the Court concluded that "[t]he principles underlying the presumption against extraterritoriality . . . constrain courts exercising their power under the ATS." *Id. at 1665*. Turning to the facts at hand, the Court found that the petitioners could not rebut the presumption because "all the relevant conduct took place outside the United States." *Id. at 1669*. The Court further stated that "even where [a plaintiff's] claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." Id. Finally, while the Court indicated that corporations can be found liable under the ATS, it stated that "mere corporate presence [does not] suffice[]." Id. Accordingly, the Court affirmed the Second Circuit's decision to dismiss the petitioners' ATS claim.

**ii) Subsequent Cases Interpreting Kiobel**

This Court finds the cases addressed by the parties in the Letters [*27] filed subsequent to their briefs to be instructive. In *Sexual Minorities Uganda v. Lively, 960 F.Supp.2d 304, 309 (D. Mass. 2013)*, the defendant was a United States citizen residing in Massachusetts, who allegedly took a number of actions in both the United States and Uganda to create "an atmosphere of harsh and frightening repression against LGBTI people in Uganda." One of the issues before the court was whether an ATS claim could be asserted against the defendant in light of Kiobel. Id. at 310. The court concluded that the case was distinguishable from Kiobel for two reasons: i) unlike the defendants in Kiobel, the defendant before it was a United States citizen, and ii) "the tortious acts committed by Defendant took place to a substantial degree within the United States, over many years, with only infrequent actual visits to Uganda." *Id. at 321*. With respect to the second reason, the court stated the following:

> The fact that the impact of Defendant's conduct was felt in Uganda cannot deprive Plaintiff of a claim. Defendant's alleged actions in planning and managing a campaign of repression in Uganda from the United States are analogous to a terrorist designing and manufacturing a [*28] bomb in this country, which he then mails to Uganda with the intent that it explode there. The Supreme Court has made clear that the presumption against the extraterritorial application of a statute comes into play only where a defendant's conduct lacks sufficient connection to the United States.

*Id. at 321-22*. The court also noted that the presumption against extraterritorial application "is based, in large part, on foreign policy concerns that tend to arise when domestic statutes are applied to foreign nationals engaging in conduct in foreign countries." *Id. at 322*. Because the case before it was not one "where a foreign national [was] being hailed into an unfamiliar court to defend himself," the court found the purpose of the presumption to be inapplicable. Id.

In contrast to *Lively*, in *Balintulo v. Daimer, 727 F.3d 179-80 (2d Cir. 2013)*, the defendants were South African corporations who allegedly sold cars and computers to the South African government in order to help the government perpetrate rapes, torture, and killings. The plaintiffs argued that the Kiobel presumption was displaced "because of the compelling American interests in supporting the struggle against apartheid in [*29] South Africa." *Id. at 191*. The court rejected this argument, finding that the Supreme Court made it clear that "the ATS does not permit claims based on illegal conduct that occurred entirely in the territory of another sovereign." *Id. at 192*. The court further stated that "a common-law cause of action brought under the ATS cannot have extraterritorial reach simply because some judges, in some cases, conclude that it should." Id. Similarly, in *Ben-Haim v. Neeman, 543 F. App'x 152, 155 (3d Cir. 2013)*, the Third Circuit affirmed the dismissal of an ATS claim because "the conduct that formed the basis of the ATS claims took place in Israel, and thus subject matter jurisdiction over [the claims] is lacking in the federal courts."

**iii) The Present Case**

**a. Subject Matter Jurisdiction**

This Court rejects the Rajaratnam Defendants' argument that Judge Cavanaugh's finding that the Court has subject matter jurisdiction over Plaintiffs' ATS claim must be overturned in light of Kiobel. The Rajaratnam Defendants focus on the fact that all of the harm to Plaintiffs occurred in Sri Lanka. This argument would hold weight if the Plaintiffs were suing the LTTE for the actions it took in Sri Lanka. However, [*30] Plaintiffs are instead suing

**Exhibit A**

7

Case 5:11-cv-02449-EJD   Document 148-1   Filed 04/29/14   Page 9 of 12

Page 8
2014 U.S. Dist. LEXIS 58314, *

the Rajaratnam Defendants for their alleged actions that occurred within the United States. For example, Plaintiffs make the following allegations: i) Jesuthasan Rajaratnam hosted meeting with LTTE operatives and speakers for LTTE fundraisers at his home in New Jersey; ii) Rajakumara Rajaratnam personally gave $1,000,000 to TRO-USA, and this money was subsequently funneled to the TRO in Sri Lanka; iii) the Rajaratnam Defendants created corporations in order to contribute money to organizations supporting the LTTE; and iv) LTTE operatives identified Jesuthasan Rajaratnam as a source for money used to bribe United States officials in connection with LTTE's attempts to remove itself from the United States' list of FTOs. In fact, Plaintiffs do not point to a single action taken by either Rajaratnam Defendant outside of the United States. This makes the present case distinguishable from Kiobel, Balintulo, and Ben-Haim, where all of the alleged illegal conduct occurred in foreign forums. As the court stated in Lively, "[t]he fact that the *impact* of [a defendant's] conduct was felt in [a foreign county] cannot deprive [a plaintiff] of a claim." *960 F.Supp.2d at 321-22* [*31] (emphasis added). Further, the Rajaratnam Defendants are United States citizens, and therefore, similar to Lively, this is not a case "where a foreign national is being hailed into an unfamiliar court to defend himself." *Id. 322.*

Accordingly, this Court finds that subject matter jurisdiction exists over the Rajaratnam Defendants.

**b. Failure to State a Claim**

The Rajaratnam Defendants argue in their supplemental brief that Plaintiffs fail to state a claim for aiding and abetting crimes against humanity, an argument rejected by Judge Cavanaugh in his August 26, 2010 Opinion. This Court will not re-consider this decision. Judge Cavanaugh permitted the parties to file supplemental briefs addressing the issues he reserved ruling on, and the issues impacted by Kiobel. This argument does not fall into the former category, as Judge Cavanaugh reserved ruling on the issues of personal jurisdiction over TRO, forum non conveniens, and failure to exhaust. Further, this argument does not fall into the latter category, as the Supreme Court stated the following in Kiobel: "The question here is not whether petitioners have stated a proper claim under the ATS, but whether a claim may reach conduct occurring [*32] in the territory of a foreign sovereign." *133 S.Ct. at 1664*. Thus, the Kiobel decision does not affect Judge Cavanaugh's ruling that Plaintiffs have stated a claim for aiding and abetting crimes against humanity under the ATS, and thus this Court will not re-consider this issue.

**C. Forum Non Conveniens**

In determining whether to dismiss Plaintiffs' claims on forum non conveniens grounds, this Court must undergo a three-step analysis. *Windt v. Qwest Communs Int'l, Inc., 529 F.3d 183, 189-90 (3d Cir. 2008)*. First, this Court must determine whether "an adequate alternative forum can entertain this case." Id. Second, if such a forum exists, this Court must determine "the amount of deference due the plaintiff's choice of forum." *Id. at 190*. Third, this Court must "balance the relevant private and public interest factors." Id.

**i) Adequate Alternative Form**

In order to demonstrate that an adequate alternative forum exists, the Rajaratnam Defendants must show that i) they are "amenable to process in the alternative forum," and 2) that the subject matter of this action is "cognizable in the alternative forum in order to provide [Plaintiffs] appropriate redress." *Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd., 860 F. Supp. 1055, 1063 (D.N.J. 1994)*.

Here, [*33] the Rajaratnam Defendants contend that Sri Lanka is an adequate alternative forum. All parties concede that Section 9 of the Civil Procedure Code of Sri Lanka would be applicable to this case (See ECF No. 33 at 10 (the Rajaratnam Defendants' concession); ECF No. 70 at 3 (Plaintiffs' concession)). Under Section 9 of the Civil Procedure Code of Sri Lanka, an "action shall be instituted in the court within the local limits of whose jurisdiction . . . the cause of action arises" (ECF No. 70, Ex. 1. Gunasekara Supp. Decl. ¶8). The Rajaratnam Defendants' expert interprets Section 9 as standing for the proposition that "[u]nder Sri Lankan law, a cause of action based in tort arises where the tort is deemed to have occurred," and argues that under this standard, Sri Lanka is the appropriate forum because the tort occurred at the time of the bombings (ECF No. 58, Ex. 1, Aziz Dec. ¶9). However, Section 5 of the Civil Procedure Code of Sri Lanka, defines "cause of action" as "the wrong for the prevention or redress which an action may be brought, and includes the denial of a right, the refusal to fulfill an obligation, the neglect to perform a duty, and the infliction of an affirmative injury" [*34] (Gunasekara Supp. Decl. ¶ 10). Here, the "wrong" for which Plaintiffs seek redress is the Rajaratnam Defendants' activities that allegedly supported the LTTE, not the actual bombings. As discussed above with respect to subject matter jurisdiction, the Rajaratnam Defendants' conduct giving rise to Plaintiffs' claims occurred in New Jersey. Thus, this Court agrees with Plaintiffs' expert that the Rajaratnam Defendants' expert confuses "the wrong complained of and the consequence of that wrong" (Id. ¶ 14), and finds that under Sri Lankan law, Plaintiffs' cause of action against the Rajaratnam Defendants arose in New Jersey.

Case 5:11-cv-02449-EJD   Document 148-1   Filed 04/29/14   Page 10 of 12

Page 9
2014 U.S. Dist. LEXIS 58314, *

Plaintiffs and the Rajaratnam Defendants also argue over the significance of the fact that Rajakumara Rajaratnam is currently serving a sentence in a United States prison based on a 2011 conviction of inside trading. The Rajaratnam Defendants claim that this fact is irrelevant because a defendant's presence is not required for a civil trial, particularly where consent is given. However, this consent would not cure the lack of subject matter jurisdiction discussed above (See id. ¶ 21).

A third argument from the parties focuses on the following quote made by Rajakumara [*35] Rajaratnam in the October 31, 2011 edition of Newsweek magazine: "In Sri Lanka I would have given the Judge 50,000 rupees and he'd be sitting having dinner at my house. Here, I got my shot. The American Justice system is by and large fair." (ECF No. 103, Ex. A). Plaintiffs argue that this quote shows that they would be treated unfairly in a Sri Lankan court. This Court gives minimal weight to this stray comment, as Plaintiffs have not produced any other evidence to demonstrate the corruption of the Sri Lankan court system. Nonetheless, due to the Civil Procedure Code of Sri Lanka, there are serious doubts as to whether a Sri Lankan court would entertain this action. Further, the remaining two factors in the forum non conveniens analysis, discussed below, favor Plaintiffs.

**ii) Deference Due to Plaintiffs' Choice of Forum**

While great deference is normally given to a plaintiff's choice of forum, less deference is given when the plaintiff is foreign. *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989). However, "because the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient [*36] one, that reluctance can readily be overcome by a strong showing of convenience." *Id. at 634*. The court in Lony stated the following about its facts at hand:

> The foreign plaintiff is suing the defendant in the latter's home forum where the latter's corporate headquarters, headquarters of the division in question, and research laboratories are located. That in itself has considerable weight in showing that the plaintiffs['] choice was based on convenience. In addition, the plaintiff has taken pains to show that much of the evidence it needs to establish liability is located in the forum it chose, and the conduct that caused the alleged injury issued from Delaware. If the plaintiffs do not prove liability, they have lost the case; thus, particularly where the liability evidence predominates in the plaintiff's choice of forum, the court should be quite cautious in disregarding such an essential fact of the litigation.

Id. Here, similar to Lony, Plaintiffs are foreigners who have chosen to sue the Rajaratnam Defendants in the United States, where the Rajaratnam Defendants reside. Further, a large numbers of the witnesses and a large amount of the evidence that Plaintiffs need to produce [*37] (e.g., evidence of the Rajaratnam Defendants' alleged raising of money in order to support the LTTE's bombings) are located in the United States. As such, this Court finds that Plaintiff's chose this forum based on convenience, and accords deference to Plaintiffs' choice.

**iii) Relevant Private and Public Interest Factors**

The burden is on the Rajaratnam Defendants to show that the balance of relevant private and public interest factors in this case "tips decidedly in favor of trial in the foreign forum." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991). Private interest factors include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.

Id. (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Public interest factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having [*38] the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

This Court finds that both the private and public factors in this case weigh in favor of a trial in New Jersey. With respect to the private factors, the Rajaratnam De-

Case 5:11-cv-02449-EJD   Document 148-1   Filed 04/29/14   Page 11 of 12

Page 10
2014 U.S. Dist. LEXIS 58314, *

fendants are correct in arguing that a fair amount of evidence is located in Sri Lanka, such as proof that the Rajaratnam Defendants' donations made their way to the LTTE and that the LTTE used the donations to carry out the relevant bombings in this case. However, as this case is about conduct taken by the Rajaratnam Defendants in New Jersey, a decent amount of relevant evidence, such as bank records and evidence relating to various fundraising events, is located in this state. Additionally, Defendants themselves, as well as the witnesses to their fundraising activities and the LTTE operatives discussed above who have implicated Rajakumara Rajaratnam in providing support to the LTTE, [*39] are located in the United States. Rajakumara Rajaratnam's incarceration would further complicate a trial in Sri Lanka. As discussed above, the Rajaratnam Defendants argue that a defendant's presence is not required for a civil trial. However, as a practical matter, the ability of a defendant to appear at a trial in one forum but not another clearly weighs in favor of the forum in which the defendant can appear. See, e.g., *Schertenleib v. Traum, 589 F.2d 1156, 1165 (2d Cir. 1978)* (analyzing the private interest factors and stating that a party's incarceration in Switzerland was a "significant problem").

With respect to the public factors, New Jersey undoubtedly has an interest in holding accountable United States citizens who conduct activities within New Jersey in order to provide assistance to terrorist groups. See *Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 612 (3d Cir. 1991)* (stating that when considering the public interest factors, district courts must "consider the locus of the alleged culpable conduct . . . and the connection of that conduct to plaintiff's chosen forum" (citation omitted)). As Plaintiffs argue, although Sri Lanka certainly has an interest in preventing [*40] terrorist attacks on its soil, the conduct challenged here is not the terrorist acts themselves, but the actions taken by the Rajaratnam Defendants in New Jersey that allegedly facilitated the attacks. The Rajaratnam Defendants rely on *Auxer v. Alcoa, Inc., 406 F. App'x 600, 605 (3d Cir. 2011)*, where the Third Circuit stated that "where culpable conduct takes place in a mass tort case in [domestic and foreign] jurisdictions and injury in only [the foreign jurisdiction]," the issue is "not a close call[,]" and "[a] public interest balancing analysis which concluded in favor of [the domestic forum] would be an abuse of discretion." This case is distinguishable from Auxer because although culpable conduct occurred both in New Jersey and Sri Lanka, the culpable conduct allegedly committed by the Rajartanam Defendants happened entirely in New Jersey. Further, in Auxler, "none of the operative facts material to causation" occurred in the domestic forum. *Id. at 602*.

Accordingly, this Court declines to dismiss the Complaint against the Rajaratnam Defendants on forum non conveniens grounds.

### D. Exhaustion of Local Remedies

In *Sosa v. Alvarez-Machain, 542 U.S. 692, 733 n.21 (2004)*, the European [*41] Commission argued as *amicus curiae*, "that basic principles of international law require that before asserting a claim in a foreign forum, the claimant must have exhausted any remedies available in the domestic legal system, and perhaps in other forums such as international claims tribunals." In response, the Supreme Court stated that it "would certainly consider this requirement in an appropriate case." Id. The Rajaratnam Defendants argue that Kiobel demonstrates that Plaintiffs should be subject to the exhaustion requirement because the Supreme Court expressed concerns in Kiobel regarding United States courts inappropriately entertaining cases that belong in other countries. However, as discussed above, this case is distinguishable from Kiobel because all of the relevant conduct in Kiobel occurred abroad, whereas the relevant conduct in this case occurred within the United States. Further, as discussed above, it is questionable whether Plaintiffs could even bring their claims in Sri Lanka. See *Sarei v. Rio Tinto, PLC, 550 F.3d 822, 830 (9th Cir. 2008)* ("A core element of the exhaustion rule is its futility, or denial of justice exception, which excuses exhaustion of local remedies [*42] where they are unavailable or inadequate."). As such, Defendants have not shown that Plaintiffs were required to exhaust their claims in the Sri Lankan court system.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that i) personal jurisdiction does not exist over TRO; ii) this Court has subject matter jurisdiction over Plaintiffs' aiding and abetting crimes against humanity claim; and iii) the Complaint need not be dismissed against the Rajaratnam Defendants for lack forum non conveniens or failure to exhaust.

The Complaint is dismissed against TRO *without prejudice*. Count one and the intentional infliction of emotional distress claim in count seven may proceed against the Rajaratnam Defendants.

Plaintiffs may filed an Amended Complaint on or before June 13, 2014 to cure the pleading deficiencies discussed above, to the extent they can be cured. Plaintiffs' failure to do so by such date may result in dismissal of the Complaint *with prejudice* as to TRO.

An appropriate order follows this Opinion.

/s/ Jose L. Linares

Jose L. Linares, U.S.D.J.

Date: April 28, 2014

**Exhibit A**
**11**