UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DOE I, DOE II, Ivy HE, DOE III, DOE IV, DOE V, DOE VI, ROE VII, Charles LEE, ROE VIII, DOE IX, LIU Guifu, WANG Weiyu, and those individual similarly situated,

  Plaintiffs,

v.

CISCO SYSTEMS, INC., John CHAMBERS, Fredy CHEUNG, and DOES 1-100,

  Defendants.

Case No.  5:11-cv-02449-EJD

**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION**

Re: Dkt. No. 155

Plaintiffs Doe I, Doe II, Ivy He, Doe III, Doe IV, Doe V, Doe VI, Roe VII, Charles Lee, Roe VIII, Doe IX, Liu Guifu, and Wang Weiyu (collectively, "Plaintiffs") filed this action against Defendants Cisco Systems, Inc., John Chambers, and Fredy Cheung (collectively, "Defendants") alleging international human rights violations under federal and state law.  On September 5, 2014, this court issued its Order Granting Defendants' Motion to Dismiss ("September 5 Order") finding that Plaintiffs' second amended complaint failed to state a claim upon which relief can be granted. See Dkt. No. 153.  Presently before the court is Plaintiffs' Motion for Reconsideration of the September 5 Order pursuant to Federal Rule of Civil Procedure 59(e), or in the alternative, Federal Rule of Civil Procedure 60(b)(6). See Dkt. No. 155.

This matter was found suitable for decision without oral argument pursuant to Civil Local Rule 7–1(b). See Dkt. No. 162.  Having carefully considered the parties' arguments, the court DENIES Plaintiffs' motion for the reasons discussed below.

United States District Court
Northern District of California

## I.   BACKGROUND

Plaintiffs are U.S. and Chinese citizens and practitioners of Falun Gong, a religious practice.  Plaintiffs allege that they were persecuted in China for their adherence to Falun Gong, and that the abuses they suffered include false imprisonment, torture, assault, and battery. According to Plaintiffs, Defendants aided and abetted the Chinese Communist Party and Public Security officers (the "Chinese Government") in committing the alleged human rights abuses by creating a customized security system that allowed the Chinese Government to eavesdrop, tap, and intercept the communications of Falun Gong believers; surveil, detect, monitor, and track their online communication; apprehend, interrogate, ideologically convert and in other ways torture, arbitrarily arrest, and detain them.  This system created by Defendants is known as the Golden Shield.  Plaintiffs contend that without the Golden Shield, Chinese officers would not have been able to coordinate large-scale investigations, obtain sensitive information, locate, track, apprehend, interrogate, torture, and persecute Falun Gong members.  Thus, Plaintiffs allege that the Golden Shield provided the means by which all the Plaintiffs were tracked, detained, and tortured.

Plaintiffs commenced the instant action in May 2011.  See Dkt. No. 1.  The operative complaint is Plaintiffs' Second Amended Complaint filed in September 2013, which alleges torture, cruel and degrading treatment, forced labor, prolonged and arbitrary detention, crimes against humanity, extrajudicial killings, and enforced disappearance under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350; torture under the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350; violation of the Electronic Communication Privacy Act ("ECPA"), 18 U.S.C. § 2512(1); and tortious conduct.  See Dkt. No. 113.  Defendants subsequently filed a motion to dismiss, which was fully briefed and heard before this court in March 2014.  See Dkt. Nos. 117, 123, 131, 128, 141.  On September 5, 2014, this court granted Defendants' motion to dismiss holding as follows: (1) Plaintiffs failed to overcome the ATS's presumption against extraterritorial application; (2) Plaintiffs cannot bring forth an aiding and abetting liability claim under the TVPA; (3) Plaintiffs failed to sufficiently plead an aiding and abetting liability claim under the ATS; (4) Plaintiffs failed to sufficiently plead an ECPA claim; and (5) given the dismissal of the

1  federal claims, the court declined to exercise supplemental jurisdiction over the state law claims.

2  See September 5 Order at 10-14.

3       On October 3, 2014, Plaintiffs filed the instant Motion for Reconsideration.  See Mot., Dkt.

4  No. 155.  This matter has been fully briefed.  See Opp'n, Dkt. No. 159; Reply, Dkt. No. 160.

5  ## II.   LEGAL STANDARD

6  ### A.   Federal Rule of Civil Procedure 59(e)

7       A motion under Rule 59(e) may be granted on the following grounds: "(1) if such motion

8  is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such

9  motion is necessary to present newly discovered or previously unavailable evidence; (3) if such

10  motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an

11  intervening change in controlling law."  Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir.

12  2011).  A successful Rule 59(e) motion is an exception, not the norm, because it "offers an

13  extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial

14  resources."  Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

15  ### B.   Federal Rule of Civil Procedure 60(b)(6)

16       Rule 60(b) provides a mechanism for parties to seek relief from a judgment when there is

17  any reason justifying relief from judgment.  Jeff D. v. Kempthorne, 365 F.3d 844, 851 (9th Cir.

18  2004) (quoting Fed. R. Civ. P. 60(b)).  Rule 60(b)(6) has been used sparingly as an equitable

19  remedy to prevent manifest injustice.  The rule is to be utilized only where extraordinary

20  circumstances prevented a party from taking timely action to prevent or correct an erroneous

21  judgment.  United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993).

22  Thus, to reopen a case under Rule 60(b)(6), a party must demonstrate both injury and

23  circumstances beyond his control that prevented him from proceeding with the prosecution or

24  defense of the action in a proper fashion.  Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1168 (9th

25  Cir. 2002), as amended on denial of reh'g and reh'g en banc (Apr. 24, 2002) (citing Alpine Land

26  & Reservoir Co., 984 F.2d at 1049).  Mere dissatisfaction with the court's order or belief that the

27  court is wrong in its decision are not adequate grounds for relief.  Twentieth Century-Fox Film

28  
3

Case No.: 5:11-cv-02449-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

United States District Court
Northern District of California

1   Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981).

2   **III.   DISCUSSION**

3         In their motion, Plaintiffs request the court to reconsider its rulings concerning the aiding

4   and abetting liability claim under the ATS and the extraterritorial reach of the ATS in light of the

5   Ninth Circuit decision Doe I v. Nestle USA, Inc., 766 F.3d 1013 (9th Cir. 2014) ("Nestle II")—

6   issued one day before this court's September 5 Order.  Plaintiffs further request the court to

7   reconsider its ruling on the ECPA claim.

8         Given that the Nestle II decision serves as the basis for Plaintiffs' motion, a brief recitation

9   of the facts underlying Nestle II is in order.  The plaintiffs in Nestle II are former child slaves who

10  were forced to harvest cocoa in the Ivory Coast, which is a critical part of the international

11  chocolate industry.  Nestle II, 766 F.3d at 1016-17.  They filed claims under the ATS against

12  Nestle USA, Inc., and others, alleging that the defendants aided and abetted child slavery.  Id. at

13  1016.  The defendants mostly buy and sell cocoa, and import most of the Ivory Coast's cocoa

14  harvest into the United States.  Id.  The defendants also offer both financial assistance and

15  technical farming assistance designed to support cocoa agriculture.  Id.  While the defendants do

16  not own cocoa farms, they dominate the Ivorian cocoa market by maintaining and protecting a

17  steady supply of cocoa through exclusive buyer/seller relationships with the cocoa farms.  Id.  Due

18  to the defendants' involvement in the cocoa market, they have economic leverage and, along with

19  other large multinational companies, they control the production of Ivorian cocoa.  Id.  The

20  defendants allegedly know about the child slavery problem, but despite their knowledge, they

21  operate in the Ivory Coast with the unilateral goal of finding the cheapest sources of cocoa.  Id.

22  As such, the defendants continue to supply money, equipment, and training to Ivorian farmers,

23  knowing that this will facilitate the use of forced child labor.  Id.

24        In Nestle II, the Ninth Circuit evaluated the plaintiffs' claims regarding aiding and abetting

25  liability under the ATS, and the application of extraterritoriality under the ATS.  The Ninth Circuit

26  declined to adopt a model standard, and remanded the case to the district court with instructions to

27  allow the plaintiffs to amend their complaint in accordance with precedent.  Id. at 1026-27.  Thus,

28  
Case No.: 5:11-cv-02449-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

1   while no new law was established, the Ninth Circuit did provide a guideline upon which such

2   claims can be evaluated.  It is within this framework that this court considers the instant motion.

3       **A.**    **Aiding and Abetting Liability Under the ATS**

4       As discussed in the September 5 Order, in order to assert a claim for aiding and abetting

5   under the ATS, a plaintiff must allege two elements: *mens rea* and *actus reus*.  See September 5

6   Order at 12; Nestle II, 766 F.3d at 1023, 1026.

7           **i.**    **Mens Rea**

8       In determining the applicable standard for satisfying the *mens rea* element, the Ninth

9   Circuit distinguished between two standards—the knowledge standard and the heightened purpose

10  standard.  Under the knowledge standard, it is sufficient to plead that the defendant had knowledge

11  that its acts would facilitate the commission of the alleged human rights violation.  Nestle II, 766

12  F.3d at 1023.  Under the heightened purpose standard, the plaintiff must plead that the defendant

13  acted with the purpose of facilitating the alleged violation.  Id.  While the Ninth Circuit declined to

14  adopt the standard to be used in this circuit, it based its analysis on the more stringent purpose

15  standard.  Id. at 1024.  In so doing, the Ninth Circuit found the following allegations sufficient to

16  satisfy the purpose standard: (1) the defendants obtained a direct benefit from the use of child

17  slave labor because it was the cheapest form of labor available and furthered their operational

18  goals; (2) the defendants had sufficient control over the Ivorian cocoa market such that they could

19  have stopped or limited the use of child slave labor by their suppliers, or could have used their

20  leverage to stop or limit the labor; and (3) the defendants participated in lobbying efforts designed

21  to defeat federal legislation that would have addressed the child slave labor issue.  Id. at 1024-25.

22  Collectively, these allegations support the inference that the defendants acted with the purpose to

23  facilitate child slavery.  Id. at 1024.

24      In their motion, Plaintiffs argue that their allegations satisfy the knowledge standard.  Mot.

25  at 3.  They contend that Defendants acquired first-hand knowledge that the Golden Shield would

26  be used to facilitate torture and abuse through their own designs and documents that made the use

27  of torture explicit, Defendants visited and established relationships with high-ranking Chinese

28   

Case No.: 5:11-cv-02449-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

United States District Court
Northern District of California

1   Government officials who made such use explicit, and there are numerous public reports

2   documenting the role played by the Golden Shield in facilitating the prosecution and torture of

3   Falun Gong practitioners in China.  Id. at 4, 6, 8.  This court, however, already applied the more

4   lenient knowledge standard and held that Plaintiffs failed to sufficiently plead that Defendants

5   knew their product would be used beyond its security purposes to commit human rights violations.

6   See September 5 Order at 12-13.  Nestle II does not change this court's previous analysis.

7          Even if this court were to apply the more stringent purpose standard, Plaintiffs argue that

8   their allegations are sufficient.  Mot. at 11.  According to Plaintiffs, Defendants knew that the

9   Chinese Government's goal was to target Falun Gong practitioners through the Golden Shield,

10  thus Defendants viewed this as a lucrative business opportunity.  Id.  As such, Defendants created

11  a marketing campaign to win contracts designing and developing the Golden Shield, and included

12  an anti-Falun Gong angle in order to win those contracts.  Id.  Plaintiffs argue that Defendants

13  specifically designed the Golden Shield to facilitate torture in order to gain access to China's

14  market, and turn a profit.  Id. at 12.  Moreover, Plaintiffs argue that Defendants were in a position

15  to control the design and implementation of certain anti-Falun Gong features used for persecution

16  to which the Chinese Government would not have otherwise had access, and Defendants

17  recommended more advanced features that collected certain information and made it possible to

18  carry out other human rights violations.  Id. at 12-13.  In response, Defendants argue that it had

19  nothing to gain from the alleged human rights violations, it had no control over the individuals

20  who committed the alleged violations, and Defendants were many steps removed from the alleged

21  violation both in the number of intervening parties and the amount of time elapsed.  Opp'n at 11-

22  13.

23         Since Plaintiffs fail to satisfy the lenient knowledge standard, they also fail to satisfy the

24  heightened purpose standard.  Moreover, even considering the guidelines provided by the Ninth

25  Circuit, Plaintiffs pleading remains insufficient.  First, there are insufficient allegations that

26  Defendants obtained a direct benefit from the persecution of Falun Gong practitioners.  While

27  Plaintiffs allege that anti-Falun Gong features in the Golden Shield are lucrative to Defendants and

28
Case No.: 5:11-cv-02449-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

1    appealing to the Chinese Government, there is no indication that Defendants would earn a reduced

2    profit if those features were absent from the Golden Shield system.  Second, there are insufficient

3    allegations that Defendants have ample control over the Chinese security system market such that

4    it can stop or limit the persecution of Falun Gong practitioners.  The alleged human rights violator

5    is the Chinese Government, thus it is far-reaching to conclude that Defendants—an American

6    private company and its executives specializing in internet networking—can have sufficient

7    influence or leverage over the Chinese Government so as to dictate its policies regarding Falun

8    Gong.  Third, there is no indication that Defendants have taken any action to shape American

9    policy towards the Chinese Government and their laws regarding Falun Gong, such as lobbying

10   the federal government to defeat legislation that would aid Falun Gong practitioners in China.

11          The persecution and abuse suffered by Falun Gong practitioners in China is odious and

12   contrary to our constitutional views of freedom of speech and religion.  Nonetheless, the Chinese

13   Government is a sovereign nation with its prerogative to establish and enforce its criminal code.

14   The manner in which the Chinese Government chooses to enforce its laws is a political question

15   that is better suited for our executive and legislative branches of government.  As to Defendants'

16   involvement in this case, the Ninth Circuit has provided that conducting business with a human

17   rights violator and merely profiting from that business, however morally reprehensible it may be,

18   does not by itself satisfy the purpose standard.  See Nestle II, 766 F.3d at 1024-25.  Accordingly,

19   Plaintiffs have not adequately pled the *mens rea* element for aiding and abetting liability under the

20   ATS, and therefore, this court's previous ruling dismissing this claim shall not be disturbed.

21          ii.    **Actus Reus**

22          Assuming arguendo that Plaintiffs have sufficiently pled the *mens rea* element, the court

23   will now evaluate Plaintiffs' arguments regarding the *actus reus* element in order to complete the

24   analysis.  To meet the *actus reus* element of an aiding and abetting claim, the defendant must have

25   provided substantial assistance or other forms of support to the commission of the crime.  Id. at

26   1026.  In Nestle II, the Ninth Circuit discussed whether there is an additional requirement that the

27   assistance must be specifically directed towards the commission of the crime.  Id.  While the Ninth

28

Case No.: 5:11-cv-02449-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

United States District Court
Northern District of California

1    Circuit noted that there appears to be "less focus on specific direction and more of an emphasis on

2    the existence of a causal link between the defendants and the commission of the crime," it

3    declined to adopt an *actus reus* standard for aiding and abetting liability.  Id.  Instead, the Ninth

4    Circuit remanded to the district court with instructions to allow the plaintiffs to amend their

5    complaint in light of Prosecutor v. Perisic, Case No. IT-04-81-A, (ICTY Feb. 28, 2013), a decision

6    issued by the International Criminal Tribunal for the former Yugoslavia, and Prosecutor v. Taylor,

7    Case No. SCSL-03-01-A (SCSL Sept. 26, 2013), a decision issued by the Special Court for Sierra

8    Leone.  Id. at 1026-27.

9        In their motion, Plaintiffs argue that their allegations demonstrate a "causal link" whereby

10   the Chinese Government used Defendants' Golden Shield technology to carry out torture and

11   abuses directed towards Falun Gong practitioners.  Mot. at 15.  In response, Defendants argue that

12   there is no basis for reconsideration because Nestle II did not change the law as to the *actus reus*

13   standard, and this court previously applied the more lenient standard of the "substantial effects"

14   test and even then found there was no "causal link."  Opp'n at 7-8.

15       The court agrees with Defendants.  The Ninth Circuit expressly stated that it "decline[d] to

16   adopt an *actus reus* standard for aiding and abetting liability under the ATS."  Nestle II, 766 F.3d

17   at 1026.  Given the absence of a change of law, Plaintiffs have failed to provide a persuasive

18   argument as to why this court's previous ruling should be changed.  Accordingly, Plaintiffs have

19   not adequately pled the *actus reus* element for aiding and abetting liability, and therefore, this

20   court's previous ruling dismissing this claim remains.

21       In sum, there is no basis upon which to grant Plaintiffs' Rule 59(e) motion because Nestle

22   II did not establish new law nor did it change the law this court relied upon when it issued its

23   ruling.  Similarly, there is no basis upon which to grant Plaintiffs' Rule 60(b)(6) motion because

24   Plaintiffs have not demonstrated both injury and circumstances beyond their control that prevented

25   them from proceeding with the prosecution of this claim.

26

27

28

United States District Court
Northern District of California

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**B.     Extraterritoriality Under the ATS**

In its September 5 Order, this court extensively discussed extraterritoriality under the ATS. See September 5 Order at 7-11.  In Nestle II, the Ninth Circuit decided to "decline to resolve the extraterritoriality issue, and instead remand to allow the plaintiffs to amend their complaint in light of" Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659 (2013).  Nestle II, 766 F.3d at 1027.

In their motion, Plaintiffs contend that based on Nestle II it is clear that domestic acts which merely aid and abet the underlying violations may be sufficient to "touch and concern" the United States, and urge this court to consider a number of factors regarding the "touch and concern" test.  Mot. at 18-19.  In opposition, Defendants argue that Nestle II did not change the prohibition against extraterritorial application of the ATS, and therefore, reconsideration of this claim is not warranted.  Opp'n at 4.

Again, the court agrees with Defendants.  The Ninth Circuit did not change the law nor did it clarify the standard upon which to evaluate extraterritoriality.  Instead, it instructed the district court to evaluate the issue in accordance to Kiobel, which this court did in its previous ruling. This court thoroughly discussed the Kiobel decision, discussed other district court opinions pertaining to this issue, and applied the "touch and concern" test.  See September 5 Order at 7-10. Ultimately, this court found that there was no sufficient nexus between Defendants' actions and the alleged violations so as to satisfy the "touch and concern" test.  Id. at 9-10.

Accordingly, given the absence of a change in controlling law, there is no basis upon which to grant Plaintiffs' Rule 59(e) motion.  Moreover, given that Plaintiffs have not demonstrated both injury and circumstances beyond their control that prevented them from proceeding with the prosecution of this claim, there is no basis upon which to grant Plaintiffs' Rule 60(b)(6) motion.

**C.     ECPA Claim**

While Plaintiffs base their entire motion on the Nestle II decision, the opinion does not discuss ECPA claims.  Nonetheless, Plaintiffs argue that because their allegations are sufficient to establish an aiding and abetting liability claim, it cannot be the case that Defendants were acting in

1   the normal course of business.  Mot. at 20.  Therefore, Plaintiffs contend that this court should

2   reconsider this matter.  <u>Id</u>.

3       Plaintiffs' argument is not persuasive.  First, there is no basis for reconsidering the ECPA

4   claim given that <u>Nestle II</u> does not mention ECPA claims.  Second, Plaintiffs' allegations are not

5   sufficient to establish aiding and abetting liability, thus there is no ground for an ECPA claim.  In

6   the absence of a persuasive argument from Plaintiff, there is no basis upon which to reconsider the

7   ECPA claim.

8   **IV.   CONCLUSION**

9       Plaintiffs have not provided a persuasive argument so as to warrant the extraordinary

10  remedy of a successful Rule 59(e) or Rule 60(b)(6) motion.  Thus, for the foregoing reasons,

11  Plaintiffs' motion is DENIED.

12

13      **IT IS SO ORDERED.**

14  Dated: August 31, 2015

15  

16  EDWARD J. DAVILA
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:11-cv-02449-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

United States District Court
Northern District of California